580 P.2d 1183

**The STATE of Arizona, Appellee,**

v.

**Harry S. McGILL, Appellant.**

**No. 4139.**

Supreme Court of Arizona, In Banc.

June 22, 1978.

---

Bruce E. Babbitt, Former Atty. Gen., John A. LaSota, Jr., Atty. Gen. by William J. Schafer, III, and Georgia B. Ellexson, Asst. Attys. Gen., Phoenix, for appellee.

Callahan, Cathcart & Gorman by Edwin F. Cathcart, Jr., Tempe, for appellant.

CAMERON, Chief Justice.

This is an appeal from a jury verdict and judgment of guilt as to two counts of sale of narcotic drug, a felony, A.R.S. §§ 36–1001, 36–1002.02, as amended 1974, and §§ 13–138, 139, 140, with a sentence thereon of not less than five nor more than fifteen years in the State Prison on each count to run concurrently.

We must answer three questions on appeal:

1. Did the trial court err in denying the defendant's motion to sever the defendant's trial from that of his codefendant?

2. Did the trial court err in denying the defendant's motion to sever the trial of the two counts?

3. Did the trial court err in denying the defendant's motion to suppress the in-court identification because it was tainted by improper out-of-court identification procedures?

The facts necessary for a determination of this matter on appeal are as follows. At about 9:55 a. m. on 27 May 1976, three Phoenix undercover police officers, Joseph J. Hauer, Daniel DeLeon and Robert Hernandez, were in a parked, unmarked police vehicle in the area of 13th Avenue and Yuma in Phoenix, Arizona. They were approached by a suspect who identified him-

self as "John." "John" asked if they wanted to "score" and indicated he could get them "some real good stuff." After the undercover agents showed interest, "John" came back to the officers' location with a female known as "Pearl." After a short period of negotiation, Officer DeLeon purchased two balloons of heroin for $40. Pearl's method of operation was to keep the heroin in balloons in her mouth. When she made a sale, she took the required number of balloons out of her mouth and exchanged them for money.

About one half hour later in the same area, undercover police officers Ronald Little and Tony R. Garcia observed a male and female walking eastbound. The officers pulled over near the pair and engaged them in a brief conversation during which the male asked the officers if they were "looking to cop." The officers indicated they were looking to purchase heroin. The male called out to the female subject and asked her to approach them. The male then introduced the female as "Pearl" and himself as "Tony." "Tony" asked the officers how much they wanted. After negotiations, Pearl produced from her mouth two balloons for which the officers gave her $40 in return. Pearl and defendant "Tony" or "John" were later arrested for the two sales of heroin.

After a trial to a jury and verdicts and judgments of guilty, the defendant appeals.

## JOINDER OF THE TWO DEFENDANTS

The charges against Pearl Belcher and defendant were consolidated for trial. Defendant made a timely motion to sever his trial from the trial of codefendant Belcher. This motion was denied. Defendant contends on appeal that this was error. Rule 13.3 of the Arizona Rules of Criminal Procedure provides:

"b. *Defendants.* 2 or more defendants may be joined when each defendant is charged with each offense included, or when the several offenses are part of a

common conspiracy, scheme or plan or are otherwise so closely connected that it would be difficult to separate proof of one from proof of the others."

And Rule 13.4 provides:

"*Severance*

"a. *In General.* Whenever 2 or more offenses or 2 or more defendants have been joined for trial, and severance of any or all offenses, or of any or all defendants, or both, is necessary to promote a fair determination of the guilt or innocence of any defendant of any offense, the court may on its own initiative, and shall on motion of any party, order such severance."

Defendant points out that he does not contest the fact that the sale took place, but merely contends that he, defendant McGill, was not one of the participants. Defendant indicates that the evidence of identification against Pearl was stronger than against defendant and that the jury would convict Pearl and then automatically convict the defendant. Because of this it is contended that trying both defendants at the same time was highly prejudicial to the defendant McGill.

We are aware that frequently there are problems involved in trying two defendants at the same time. That there are problems in joint trials of two or more defendants does not mean that in every case the court must ignore judicial economy and grant a severance if demanded by one of the defendants. It is only when the defendant can clearly show that a severance is necessary for a fair trial that the trial court must grant a severance:

"Severance shall be granted upon motion of a party if it 'is necessary to promote a fair determination of the guilt or innocence of any defendant of any offense * * *.' Rule 13.4(a), Rules of Criminal Procedure. It will also be granted if a court detects the presence or absence of unusual features of the crime or cases that might prejudice the defendant. (ci-

tations omitted) The scope of our review of a trial court's granting a request for severance is limited to asking whether a clear abuse of discretion is shown. (citation omitted)" *State v. Druke*, 115 Ariz. 224, 226, 564 P.2d 913, 915 (App.1977).

In the instant case, the two crimes alleged to have been committed by the defendant were the same two crimes allegedly committed by the codefendant Pearl Belcher. They were committed at the same time and in the same place. The proof that convicted the defendant at the same time convicted the codefendant. In other words, the crimes of the two defendants were so closely intertwined that it would have been difficult, if not impossible, to separate proof of defendant's crime from that of his codefendant. Under these circumstances, it was not only proper to join the trials of the two defendants, Rule 13.3(b), but there was no prejudice to defendant in being tried with the codefendant. The defendant has failed to demonstrate that the trial court abused its discretion in failing to grant a severance of the parties. Rule 13.4, Arizona Rules of Criminal Procedure; *State v. Williams*, 108 Ariz. 382, 499 P.2d 97 (1972). We find no error.

## SEVERING THE COUNTS

Defendant further contends that it was error to deny defendant's motion to sever the two counts because he was entitled to a severance of the counts as a matter of right pursuant to Rule 13.4(b), Arizona Rules of Criminal Procedure. Rule 13.-3(a), Arizona Rules of Criminal Procedure, provides:

"a. *Offenses.* Provided that each is stated in a separate count, 2 or more offenses may be joined in an indictment, information, or complaint, if they:

(1) Are of the same or similar character: or

(2) Are based on the same conduct or are otherwise connected together in their commission; or

(3) Are alleged to have been a part of a common scheme or plan."

Rule 13.4(b) provides:

"b. *As of Right.* The defendant shall be entitled as of right to sever offenses joined only by virtue of Rule 13.3(a)(1)."

It is defendant's contention that these matters were joined pursuant to Rule 13.-3(a)(1) solely because they were of similar character. Were this the only reason for joining the two counts in one trial, the defendant would, as a matter of right, be entitled to severance pursuant to Rule 13.-4(b). However, it is apparent from the nature of the crimes charged that they were not joined "only by virtue" of the fact that they were "of the same or similar character," but also based on the "same conduct" or were "otherwise connected together in their commission" and were also "part of a common scheme or plan." Therefore, they were also joined pursuant to rule 13.3(a)(2) and (3). Defendant is not then entitled to severance of the counts as a matter of right, but only if it is "necessary to promote a fair determination of [his] guilt or innocence." As we have stated:

"The association of two of the three criminals and the closeness of the location leads us to pay a good deal of respect to the trial court's determination that the two robberies should be tried together. The needs of judicial economy, the closeness of the two robbery dates (9 February and 10 February), the location of the robberies, the similarity of the type of robbery, the criminals' behavior, and the lack of shown prejudice resulting from hearing the crimes together, leads us to believe that the court did not abuse its discretion in consolidating the matters for trial." *State v. Williams*, supra, 108 Ariz. at 386, 499 P.2d at 101 (1972).

We find no error.

## PRETRIAL IDENTIFICATION

The defendant contends that the pretrial identification was unduly sugges-

tive and thus tainted the in-court identification, requiring suppression of the in-court identification. The facts concerning the pretrial identification are as follows. Detective Little, who had made the purchase of the two balloons at the 10:35 (second) sale, testified that some three weeks after the sale he described "Tony" to a detective John Dee in an attempt to ascertain his full identity. Detective Dee indicated that the description sounded familiar to him and they went through a group of photographs in the "M" section of an alphabetical photo file which contained defendant's picture. During the hearing on the motion to suppress, Detective Little testified:

"Q You stated the male subject was known to you as Tony?

"A Yes.

"Q Was he subsequently identified by another name?

"A Yes.

"Q How did you determine his correct identity?

"A I had a conversation on the 16th of June, I believe it was with Detective John Dee, also of the Drug Enforcement Unit.

At that time, I was describing suspect Tony to him, because he concentrated basically in the south part of Phoenix. He said that the person sounded very familiar to him. He believed he knew who it was.

At this point, Detective Dee went over to his desk; removed a folder file box. He went to the 'Mc' section of the file box, and started flipping to the pictures—

"Q What do you mean?

"A Alphabetical arrangement of the pictures. He was flipping through the pictures. I was looking over his shoulder.

He continued flipping through the pictures. When he reached one picture, I said, 'That's him. That's Tony.'

"Q Approximately, how many pictures were you able to view, while you were looking over his shoulder?

"A I'd say 15 to 20. I couldn't tell you exactly.

"Q Who did this Tony subsequently turn out to be.

"A Harry S. McGill.

"Q Is he present in the Courtroom today?

"A Yes.

"Q Where is he?

"A The gentleman wearing the 'MCSD' t-shirt with the blue Levi's—white t-shirt; sitting over there.

"Q You identified Mr. McGill in the Courtroom today.

Can you state whether or not your identification of him in the Courtroom today is based upon your having seen him at the time that you made the purchase on May 27th?

"A Yes.

"Q Is this—You can state today, from your memory, looking at him you can remember him back to the time of the incident?

"A Yes, Sir."

We find no error in the identification of the defendant for the 10:35 sale. *State v. Dessureault,* 104 Ariz. 380, 453 P.2d 951 (1969).

As to the 9:55 (first) sale, after Detective Little had identified the picture of the defendant in Detective Dee's file, Detective Little then took the defendant's photograph over to Detective DeLeon who had made the 9:55 purchase. Detective Little asked, "Does this guy look familiar to you?" DeLeon recognized the photograph of the defendant as "John" who made the sale to him.

Defendant contends that this was improper identification and that the in-court identification was tainted by this impermissible photo identification. Even assuming that this second photo identification is unduly suggestive, we still do not need to

reverse on appeal. The United States Supreme Court has stated:

" * * * [W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968).

We have stated:

" * * * It is clear following *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), that suggestiveness alone does not necessitate the exclusion of evidence. Rather, the question is whether under the 'totality of the circumstances' the identification was 'reliable.' * * *

* * * * * *

"*Neil v. Biggers* supra, lists five factors to be evaluated in considering the reliability of identification:

1. The opportunity of the witness to view the criminal at the time of the crime,

2. the witness' degree of attention,

3. the accuracy of the witness' prior description of the criminal,

4. the level of certainty demonstrated by the witness at the confrontation, and

5. the length of time between the crime and the confrontation." *State v. Ware,* 113 Ariz. 340, 343, 554 P.2d 1267, 1270 (1976).

In the instant case, Detective DeLeon testified at the suppression hearing:

"Q The male subject that was there, was known to you on the 27th of May as John, were you able to subsequently determine his true identity?

"A Yes.

"Q What was his true identity?

"A Mr. McGill.

"Q Is he present in the Courtroom?

"A Yes. Seated back to the north of the Sheriff Deputy. Back there (gesturing). Wearing a white t-shirt with 'MCSD'; blue denim-type trousers; white tennis shoes.

"Q How is it you came to learn his true identity?

"A While I was at SIB, I was viewing some photographs of another suspect. Detective Little at that time threw a photograph on the desk and asked if I knew this subject.

"Q How many photos were you looking at at the time, that Officer Little threw Mr. McGill's photo on the desk?

"A I had five photograph in front of me.

"Q Negro subjects?

"A Yes.

"Q All five.

"A Yes.

"Q After he laid Mr. McGill's photo down, were you able to identify the individual?

"A Yes.

"Q What did you base your identification at that time on?

"A My prior contact with the individual.

"Q If you can try and put your viewing the photo on June 16th out of your mind—Can you do that?

"A Yes.

"Q Thinking back to May 27th, the time you made the purchase, can you at this time say the gentleman in Court is the individual that was involved in the transaction, based on your viewing him at that time?

"A Yes."

Detective DeLeon's identification did not waiver during cross-examination. We have stated:

"Whether there has been an accurate in-court identification of the defendant, not

tainted by prior identification procedures and whether such procedures are fair, are preliminary questions for the trial court, (citation omitted), and the trial court's determination will not be overturned on appeal absent a clear and manifest error. (citations omitted)" *State v. Lamb*, 116 Ariz. 134, 139, 568 P.2d 1032, 1037 (1977).

We believe, in the instant case, that the in-court identification by Detective De-Leon was based not upon the photo identification, but upon the view of the defendant at the time of the crime. It has not been shown that the identification of the defendant at trial was tainted by any questionable pretrial identification.

Judgments affirmed.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.