661 P.2d 224

**STATE of Arizona, Appellee,**

v.

**John SELF, Appellant.**

**No. 1 CA–CR 5650.**

Court of Appeals of Arizona, Division 1, Department A.

Feb. 3, 1983.

Rehearing Denied Feb. 25, 1983.

Review Denied Mar. 22, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., Robert S. Golden, Asst. Attys. Gen., Phoenix, for appellee.

George M. Sterling, Jr., Phoenix, for appellant.

## OPINION

KLEINSCHMIDT, Judge.

Appellant John Self challenges his convictions for perjury and tampering with physical evidence arising out of proceedings occurring before a state bar committee on arbitration of fee disputes. We affirm.

John Self retained attorney Larry Richmond in 1978 regarding a child custody matter. When he became unhappy with the total amount of attorney's fees charged he filed a Petition for Arbitration. At the hearings before the Committee of the State Bar of Arizona on Arbitration of Fee Disputes the main issue was whether Self had made a certain $1,200 payment. Both in his pleadings and in testimony before the committee he claimed to have made the payment by check. Richmond, however, said that he never received such a check.

At the first hearing, appellant testified under oath. During his testimony, he presented a photocopy of the $1,200 check in question which he said had been paid. The arbitrators asked Self to have his bank send them a copy of the disputed check. Thereafter, one arbitrator and Richmond each received in the mail a photocopy of the check exactly like the one presented at the first hearing. It was later demonstrated that this mailing was not from the bank. All of the copies showed that the disputed

check was drawn to "Richmond and Lawson" as payees. The state's theory was that the original check, # 1325 dated April 28, 1978, was an altered photocopy which had originally been made out to a different payee.

At a second arbitration hearing the appellant failed to produce the original check although he had been requested to do so. Finally, appellant told the arbitrators that the original cancelled check could not be located.

A bank employee, who testified at trial, stated that the true copy of the original cancelled check reflected a payee of "Richard Johnson", not "Richmond and Lawson"; that appellant had never requested the bank to send out a copy of the disputed check; that the identical mailings to Richmond and the arbitrator had not come from the bank; and that in his opinion, the payee had been changed on the disputed photocopy of the $1,200 check.

An investigator for the Attorney General's Office testified that he had requested Mary Hester, appellant's girl friend and codefendant in these proceedings, to produce all the original cancelled checks paid to the attorney; that she had produced all but the crucial one; and that appellant himself had told him that he, appellant, had personally given a $1,200 check to a Mr. Johnson. Mr. Johnson concluded the state's case by testifying that appellant personally delivered the disputed check to him.

Appellant did not testify in his own defense. When his codefendant, Mary Hester, was called to testify in his behalf, she invoked the Fifth Amendment privilege against her counsel's advice. She made it clear for the record that she would not testify at the joint trial.

Both defendants were found guilty as charged by the jury. Following entry of judgment of guilt, the sentence of John Self was suspended and he was placed on two-years probation. We have jurisdiction of his appeal from the judgments of conviction and imposition of probation. A.R.S. §§ 12–120.21(A)(1), 13–4031, –4033.

## SEVERANCE OF THE CODEFENDANTS

Appellant first argues that the trial court erred in refusing to sever the trials of himself and his codefendant, thus depriving him of due process because he was unable to present witnesses in his own behalf. He argues that the trial court's refusal to sever the trials prevented him from calling an exculpatory witness, his codefendant, who would not have invoked the Fifth Amendment had their trials been severed. We find this argument to be without merit.

■ Rule 13.4, Ariz.R.Crim.P., relating to severances, provides, in pertinent part, as follows:

a. In General. Whenever 2 or more offenses or 2 or more defendants have been joined for trial, and severance of any or all offenses, or of any or all defendants, or both, is necessary to promote a fair determination of the guilt or innocence of any defendant of any offense, the court may on its own initiative, and shall on motion of a party, order such severance.

A severance from a codefendant is required only where a defendant can clearly show that a severance is necessary for a fair trial. *State v. McGill,* 119 Ariz. 329, 580 P.2d 1183 (1978). The grant or denial of a severance from a codefendant is a matter for the trial court's discretion. *State v. Ferguson,* 120 Ariz. 345, 586 P.2d 190 (1978). Such a decision by the trial court will not be reversed on appeal absent a clear abuse of discretion. *State v. Brewer,* 26 Ariz.App. 408, 549 P.2d 188 (1976).

■ In *State v. Druke,* 115 Ariz. 224, 564 P.2d 913 (App.1977), it was held that a denial of a severance from a codefendant was proper. There, considerations of judicial economy outweighed the potential for prejudice against the defendant as there was no "manifest showing of prejudice." The defenses of the codefendants were "tangential" rather than on a "collision course." Despite the fact that one codefendant's testimony would not be available to the other unless there were separate trials there was only a "mere possibility"

that such testimony might be forth coming and there was no potential harm of "rub-off" as where tremendous evidence exists against only one codefendant and the other is convicted largely by association. We find *Druke* instructive in the case at bar.

Defense counsel repeatedly attempted to obtain a severance. Before trial, via affidavit, and then by offer of proof when Mary Hester invoked her Fifth Amendment privilege at trial, defense counsel attempted to show the willingness and unique ability of Mary Hester to give testimony exculpatory of appellant at a separate trial. However, he was not able to do so. The affidavits originally were framed in conclusory terms to the effect that her testimony would be "exculpatory" of appellant and were speculative as to whether she would invoke her Fifth Amendment privilege at a joint trial. The same was true of the formal offer of proof. Defense counsel indicated that Hester would testify that she did all bookkeeping for the family and wrote all checks to the attorney; that she asked the bank to send copies to the arbitrators; that she did not see appellant alter the disputed check; that she had no knowledge of appellant altering the check or of his knowledge that the check was altered; that she believed the appellant did not present the disputed check to the arbitrators but that the bank presented the disputed check; and that neither she nor appellant copied the disputed check, to her knowledge. At the conclusion of the offer of proof, the trial court made the following ruling:

THE COURT: ... On the motion to sever, the case is a circumstantial one and I think there's substantial evidence of guilt to go to the jury. It is clear this is not a solid case against either defendant. If Mary Hester were going to testify that she in fact changed the check or knew who did, in fact she knew, therefore, Mr. Self didn't, I would grant the severance, but under the case you have provided, it says I must find that you would be manifestly prejudiced by my failure to grant a severance. If she testified to everything you told me this morning, I don't see how that exculpates your client, I don't see

why that entitles him to a severance and a separate trial. It really does no more than what has already been done by the pleas of not guilty by both clients. They denied they did it, that's all she's going to say, both didn't do it. That really doesn't help Mr. Self.

Motion to sever is denied.

*United States v. Seifert,* 648 F.2d 557 (9th Cir.1980), relied upon by appellant, does not require a different conclusion. That decision also requires, before a severance is granted, a showing that first, the codefendant would testify and second, such testimony would be favorable to the moving defendant. At the very best the proffered testimony would only have tended to exculpate John Self. It was certainly not directly exculpatory, and given the posture of the entire case, there were so many unanswered questions in it that it was simply not an abuse of discretion to deny a motion to sever based on it.

## SUFFICIENCY OF THE EVIDENCE

█ Appellant first contends that the perjury conviction was based on insufficient evidence because there was no particularized proof of the alleged false statement. He argues that the state's evidence consisted only of uncertain recollections of Mr. Richmond and one of the arbitrators, which was limited to a composite of the testimony of both appellant and Mary Hester as "indicating," "intimating," or "something to the effect" that all five checks, including the copy of check number 1325, were previously paid to Richmond for legal services. Without commenting on the legal basis for this claim, we find that it is not supported by the record.

In his trial testimony, Richmond testified as follows:

Q. Was any evidence presented concerning a payment you did not receive, at this first arbitration hearing?

A. Yes.

Q. Would you explain that to us, please?

A. Yes. Mr. Self and Miss Hester had indicated I believe in both the petition to

the arbitrators and the testimony before the arbitration panel, that they had given us a check for $1,200 on the same day, 4/21/78, and we simply did not show that credit or receipt of any check or receipt of any cash of any kind on that day or at any other time.

. . . .

Q. Were the witnesses sworn before they testified?

A. Yes.

Q. Do you recall who swore the witnesses in?

A. Mr. Hay.

Q. Did Mr. Hay swear John Self in?

A. Yes.

Q. Do you recall John Self's testimony in regard to the $1,200 check?

A. Yes.

Q. Would you relate what you recall of it, please?

A. The check, photocopy of this particular check, together with others, other photocopies of the checks was submitted by Mr. Self and he testified that those were the payments that he made to my law firm.

. . . .

Q. Let me ask you to go back to Mr. Self's testimony at this hearing. Did he make any statements in regard to this $1,200 check to you?

A. He didn't make them to me, he made them to the arbitration panel.

Q. What did he say?

A. My best recollection is that the $1,200 check, or photocopy thereof, was submitted by Mr. Self and he testified that the sum total of those checks which were submitted to the arbitration panel were the total amount of monies paid to my law firm for the legal services, court costs and other expenses we advanced on his behalf.

Q. And the $1,200 payment was amongst that evidence?

A. Yes.

The crime of perjury is set forth in A.R.S §§ 13-2702 and 13-2701, as follows:

§ 13-2702. Perjury; classification

A. A person commits perjury by making a false sworn statement in regard to a material issue, believing it to be false.

. . . .

§ 13-2701. Definitions

In this chapter, unless the context otherwise requires:

. . . .

2. "Statement" means any representation of fact and includes a representation of opinion, belief or other state of mind where the representation clearly relates to state of mind apart from or in addition to any facts which are the subject of the representation.

3. "Sworn statement" means any statement knowingly given under oath or affirmation attesting to the truth of what is stated, including a notarized statement.

We find the testimony of attorney Richmond to be sufficiently definite to describe the type of representation which is clearly proscribed by the statutory scheme.

Appellant also alleges that neither conviction can be based on a proceeding before the State Bar Committee on Arbitration of Fee Disputes. In regard to the perjury conviction, the argument is clearly without merit, as the statutes require only that the sworn statement be false. The Criminal Code Commission, whose proposed drafts of the perjury statutes were substantially adopted, states in its Commentary to the proposed perjury statutes:

The official proceeding requirement for perjury was deleted because the requirement of an oath covers any situation now covered by A.R.S. § 13-561 (trial, hearing, investigation, deposition, certification or declaration).

However, appellant further argues that the tampering conviction cannot stand, as the proof does not show that it occurred before an "official proceeding." The statutes in question provide, in pertinent part:

§ 13-2809. Tampering with physical evidence; classification

A. A person commits tampering with physical evidence if, with intent that it be

used, introduced, rejected or unavailable in an official proceeding which is then pending or which such person knows is about to be instituted, such person:

1. Destroys, mutilates, alters, conceals or removes physical evidence with the intent to impair its verity or availability; or

2. Knowingly makes, produces or offers any false physical evidence; or

3. Prevents the production of physical evidence by an act of force, intimidation or deception against any person.

. . . .

§ 13–2801. Definitions

In this chapter, unless the context otherwise requires:

. . . .

2. 'Official proceeding' means a proceeding heard before any legislative, judicial, administrative or other governmental agency or official authorized to hear evidence under oath.

We do not agree with appellant that the hearings before the committee were outside the statutory framework.

The organization of the State Bar of Arizona is established in Rule 27(a), Rules of the Supreme Court of Arizona. Rule 27(d) delegates to the Board of Governors of the State Bar the power to make rules and regulations, and to appoint committees and executive committees. The By-laws of the State Bar of Arizona contain, in Article 2, its purposes and objects. Without setting them forth verbatim, it is sufficient to say that the successful resolution of fee disputes between attorneys and clients would unquestionably fall within the stated purposes and objects. Further, Article 3, Section 2 of the same By-laws confers the power to appoint such "standing committees as shall be deemed advisable." Thus, the State Bar has created the Committee on Arbitration of Fee Disputes.

The Rules of Committee of the State Bar of Arizona on Arbitration of Fee Disputes, Rule 4, provides in pertinent part as follows:

4. CONDUCT OF THE HEARING: RIGHT TO PRESENT EVIDENCE; RIGHT TO COUNSEL; RIGHT TO RECORD HEARING; EFFECT OF FAILURE TO APPEAR; POSTPONEMENTS.

. . . .

D. Upon request by any party to the arbitration or any member of the panel, the testimony of witnesses shall be given under oath. When so requested, the member of the panel presiding at the hearing may administer oaths to witnesses.

In conclusion, we find that the proceeding in question was an "official proceeding" within the meaning of A.R.S. § 13–2801, in that it was before a judicial agency authorized to hear evidence under oath. Appellant's argument is without merit, and the evidence was sufficient.

## SUFFICIENCY OF THE INDICTMENT

Appellant next challenges the sufficiency of the indictment for perjury, arguing that it fails to specify the exact statement allegedly made. The charge in question is as follows:

The Grand Jurors of Maricopa County, Arizona, accuse MARY HESTER and JOHN SELF, by charging that in Maricopa County, Arizona, on or about the 11th day of August, 1979, ... JOHN SELF committed perjury by making a false sworn statement in regard to a material issue, believing it to be false, in violation of A.R.S. Sec. 13–2701, 13–2702, 13–601, 13–701, 13–702 and 13–801.

Appellant cites no authority for his argument, and we note that the indictment tracks the statutory language.

Rule 13.2, Ariz.R.Crim.P., provides in part as follows:

a. In General. The indictment or information shall be a plain, concise statement of the facts sufficiently definite to inform the defendant of the offense charged.

b. Charging the Offense. The indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged to have violated.

The Comment to the rule contains the following:

> The charging document need not contain allegations of time, place, value, price, ownership, intent, means of commission, nor need it characterize the commission of the offense as 'willful' or 'felonious,' except where necessary to give adequate notice of the charges.

■ The purpose of an indictment or information is to give notice of the offense charged so that the accused may prepare a defense, and to provide a sufficient defense to subsequent prosecutions under double jeopardy principles. *State v. Wilson,* 126 Ariz. 348, 615 P.2d 645 (App.1980). Generally, an indictment or information in the language of the violated statute is sufficient. *State v. Miller,* 100 Ariz. 288, 413 P.2d 757 (1966). We note that appellant does not allege that he did not have notice of the offense charged. All parties were aware of the basis for the indictment, and we find that its form was sufficient.

## AMENDMENT OF THE INDICTMENT

■ Appellant finally alleges that the trial court erred in allowing the state to amend the indictment at the close of trial, to change the date of the perjury charge from August 11, 1979, to September 11, 1979. He claims that this deprived him of a fair trial and created a negative inference as to the credibility of his only witness, thus constituting a comment by the trial judge upon the evidence. Rule 13.5, Ariz.R. Crim.P., provides as follows:

> b. Altering the Charges; Amendment to Conform to the Evidence. The preliminary hearing or grand jury indictment limits the trial to the specific charge or charges stated in the magistrate's order or grand jury indictment. The charge may be amended only to correct mistakes of fact or remedy formal or technical defects, unless the defendant consents to the amendment. The charging document shall be deemed amended to conform to the evidence adduced at any court proceeding.

The record indicates that the defense called one of the panel arbitrators as its only witness. He was not aware of the exact date of the first arbitration hearing at the time he testified. One of the state's witnesses, Arbitrator Hay, was the only witness who testified unequivocally as to the date of the first hearing, testifying that it was September 11, 1979. Therefore, it is clear that the trial judge could not have commented on the evidence, as there was no conflict in it.

The record indicates that all parties understood the correct date after Hay testified. Appellant knew that the perjury charge related to the first hearing, regardless of its date, and does not allege otherwise. We are thus unable to see any showing of lack of notice or prejudice when the trial court allowed this amendment. This defect should be considered "formal or technical" within the meaning of Rule 13.5(b) because its amendment did not operate to change the nature of the offense charged or to prejudice the appellant in any way. *State v. Bruce,* 125 Ariz. 421, 610 P.2d 55 (1980). We find no error.

Having found no reversible error, the judgments of conviction and the imposition of probation are affirmed.

OGG, P.J., and CORCORAN, J., concur.