NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

ERNESTO ALONZO MORAN, *Petitioner,*

*v.*

THE HONORABLE ROBERT MILES, Judge of the SUPERIOR COURT OF
THE STATE OF ARIZONA, in and for the County of MARICOPA,
*Respondent Judge,*

WILLIAM MONTGOMERY, Maricopa County Attorney,
*Real Party in Interest.*

No. 1 CA SA 15-0053

FILED 4-7-2015

---

Petition for Special Action from the Superior Court in Maricopa County
No. CR2014-105894-001
The Honorable Robert E. Miles, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

---

COUNSEL

Shell & Nermyr, PLLC, Chandler
By Mark A. Nermyr
*Counsel for Petitioner*

Maricopa County Attorney's Office, Phoenix
By David R. Cole
*Counsel for Real Party in Interest*

---

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge John C. Gemmill and Judge Donn Kessler joined.

---

**J O N E S**, Judge:

¶1   Through this special action, Ernesto Moran challenges the trial court's grant of the State's motion to amend the indictment brought against him, in which the State sought to change the date of the charged offense of misconduct involving weapons from December 18, 2013, to February 4, 2014. Moran argues the amended indictment describes an offense separate and apart from that originally charged, and for which there has been no finding of probable cause by a grand jury, in violation of the Arizona Constitution and Arizona Rules of Criminal Procedure. For the following reasons, we accept jurisdiction and grant relief.

**FACTS AND PROCEDURAL HISTORY**

¶2   On February 12, 2014, the State presented evidence to a grand jury regarding Moran's alleged participation in a home invasion. In his presentation, the prosecutor told the grand jury the crimes "occurred in Phoenix and in Maricopa County all on the 18th day of December, 2013."

¶3   The victim reported to police that, on December 18, 2013, she was confronted by three subjects as she exited the shower in her home. One subject grabbed her by the hair, threw her to the ground, pointed a pistol at her face, and demanded she tell him the location of her safe. A second subject discovered a shotgun that belonged to the victim's boyfriend and also pointed it at her face and demanded the location of the safe. The three subjects then searched the house, collected shotgun shells and other accessories in a bag, and exited the home through the front door with the bag and shotgun.

¶4   The victim recognized one of the subjects, who was later identified as Moran, as an acquaintance of her cousin. With this knowledge, she was then able to locate a photograph on Facebook of Moran holding the shotgun taken from her residence. On February 4, 2014, Moran was detained outside his mother's home while exiting a green SUV and transported to the police station for questioning regarding the home

invasion.  During the interview, Moran admitted having a prior felony conviction.  In the green SUV, police officers found the shotgun, shotgun shells, and other ammunition believed to have been taken from the victim's home.

¶5        On February 12, 2014, a grand jury returned a True Bill, which indicted Moran on five offenses: burglary in the first degree (count 1); armed robbery (count 2); kidnapping (count 3); aggravated assault (count 4); and misconduct involving weapons (count 5).  Each crime in the indictment was specifically alleged to have occurred on December 18, 2013.

¶6        On November 14, 2014, the trial court granted the State's motion to dismiss counts 1 through 4.  Thereafter, on February 17, 2015, the State moved to amend count 5, the sole remaining count, in order to "chang[e] the date of offense indicated . . . from the '18th day of December 2013' to the '4th day of February 2014.'"  The State argued (1) it simply sought "to correct a mistake in fact in the indictment as to the date that [Moran] possessed the shotgun," (2) the change of date did not alter any of the elements of a charge, and (3) Moran would not be prejudiced by an amendment because the State's discovery reflected the shotgun was recovered from Moran on February 4, 2014.  Over Moran's objection, the court granted the State's motion on the ground that the incorrect date was a "mistake of fact."  This special action followed.

## JURISDICTION

¶7        This Court has discretion to accept special action jurisdiction, and will generally do so in cases that raise issues of statewide importance, issues of first impression, pure legal questions, or issues that are likely to arise again.  *Frimmel v. Sanders*, 236 Ariz. 232, 238, ¶ 22, 338 P.3d 972, 978 (App. 2014) (citing *Potter v. Vanderpool ex rel. Cnty. of Pinal*, 225 Ariz. 495, 498, ¶ 6, 240 P.3d 1257, 1260 (App. 2010), and *Luis A. v. Bayham-Lesselyong ex rel. Cnty. of Maricopa*, 197 Ariz. 451, 452-53, ¶ 2, 4 P.3d 994, 995-96 (App. 2000)).  Special action review is also appropriate where there is no plain, adequate or speedy remedy by appeal, and justice cannot be obtained by other means.  *Id.* (citing *Luis A.*, 197 Ariz. at 452-53, ¶ 2, 4 P.3d at 995-96); Ariz. R.P. Spec. Act. 1(a).[1]

---

[1]        Absent material revisions from the relevant date, we cite the current version of statutes and procedural rules.

¶8        Generally, a defendant cannot challenge a grand jury's finding of probable cause on direct appeal. *State v. Moody*, 208 Ariz. 424, 439-40, ¶ 31, 94 P.3d 1119, 1134-35 (2004) (citing *State v. Murray*, 184 Ariz. 9, 32, 906 P.2d 542, 565 (1995)). Additionally, the interpretation and application of the Arizona Rules of Criminal Procedure are questions of law appropriate for review by special action. *Chartone, Inc. v. Bernini*, 207 Ariz. 162, 165-66, ¶ 8, 83 P.3d 1103, 1106-07 (App. 2004). For these reasons, and because we conclude the trial court abused its discretion, we accept jurisdiction and grant relief. Ariz. R.P. Spec. Act. 3.

## DISCUSSION

¶9        We review a decision on a motion to amend an indictment for an abuse of discretion. *State v. Johnson*, 198 Ariz. 245, 247, ¶ 4, 8 P.3d 1159, 1161 (App. 2000) (citing *State v. Sammons*, 156 Ariz. 51, 54, 749 P.2d 1372, 1375 (1988)). The trial court abuses its discretion where it commits an error of law in the process of reaching a discretionary conclusion. *Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, 254, ¶ 10, 63 P.3d 282, 285 (2003) (citing *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 456, 652 P.2d 507, 529 (1982)).

¶10        In Arizona, a felony action may be commenced by indictment or the filing of a complaint.[2] Ariz. Const. art. 2, § 30; Ariz. R. Crim. P. 2.2. "An indictment is a written statement charging the commission of a public offense, presented to the court by a grand jury, endorsed a 'true bill' and signed by the foreman [of a grand jury]." Ariz. R. Crim. P. 13.1(a). It serves a dual purpose: to provide a defendant with notice of the charges against him, and also "to ensure that a neutral intermediary — a grand jury comprised of ordinary citizens — finds that probable cause exists *before* the State can bring charges." *McKaney v. Foreman ex rel. Cnty. of Maricopa*, 209 Ariz. 268, 274-75, ¶ 31, 100 P.3d 18, 24-25 (2004) (Hurwitz, J., dissenting in part and concurring in part) (citing *State v. Superior Court (Mauro)*, 139 Ariz. 422, 424, 678 P.2d 1386, 1388 (1984), and *State v. Baumann*, 125 Ariz. 404, 408, 610 P.2d 38, 42 (1980)); *see also* Ariz. Rev. Stat. § 21-413 (requiring indictment be based upon probable cause); Ariz. R. Crim. P. 12.1(d)(4) (same). The indictment therefore "limits the trial to the specific charge or charges" stated therein. Ariz. R. Crim. P. 13.5(b).

---

[2]       Because the State elected in the immediate case to proceed by indictment, we need not delve into the respective rights and obligations associated with the complaint process.

¶11 Absent consent from the defendant, an indictment may be amended "only to correct mistakes of fact or remedy formal or technical defects." *Id.*; *see also State v. Kelly*, 123 Ariz. 24, 26, 597 P.2d 177, 179 (1979) ("[A]n indictment may not be amended by the court to charge new and different matters of substance without the concurrence of the grand jury.") (citing *State v. Fogel*, 16 Ariz. App. 246, 250, 492 P.2d 742, 746 (1972)).  Thus, by its terms, Rule 13.5(b) applies only where there is a "mistake or defect in the indictment."  *See State v. Freeney*, 223 Ariz. 110, 113, ¶ 18, 219 P.3d 1039, 1042 (2009).

¶12 Amendment of the date of an offense has been found appropriate where the offense itself remains unchanged.  For example, in *State v. Bruce*, amendment of the indictment, adjusting by one day the date the defendant knowingly received the earnings of prostitution, was appropriate to conform to the evidence presented at trial.  125 Ariz. 421, 423-24, 610 P.2d 55, 57-58 (1980); *see also State v. Self*, 135 Ariz. 374, 380, 661 P.2d 224, 230 (App. 1983) (permitting amendment to perjury charge to conform to evidence that date of hearing at which defendant perjured himself was September 11, 1979, rather than August 11, 1979, as alleged in indictment).  An amendment to the date of a charged offense is impermissible, however, where the evidence reflects two separate events occurred.  *See State v. Mikels*, 119 Ariz. 561, 563, 582 P.2d 651, 653 (App. 1978) (vacating defendant's conviction based upon amendment to indictment changing location of sodomy offense from shower to bunk where evidence indicated they were two separate events occurring twelve or thirteen days apart).

¶13 Here, the State argues that the discrepancy between the dates was a technical defect, arising from the lack of a "clear transition" during the presentation to the grand jury between the events of December 18, 2013, and those of February 4, 2014, and that "it can readily be inferred that Count 5 was based on what law enforcement officers discovered the day [Moran] was arrested."  This argument is not supported by the record.  The grand jurors were never told the date of Moran's detention, or that any of the described events specifically occurred on February 4, 2014.  Instead, the State asserted that all of the alleged crimes, including misconduct involving weapons, occurred "on the 18th day of December, 2013."  The evidence presented to the grand jury also supported a finding of probable cause that Moran possessed a weapon on December 18, 2013.  Specifically, the grand jury heard that, on December 18, 2013, Moran, a prohibited possessor, was involved in a home invasion and robbery with two other persons, and was one of the assailants who pointed a firearm at the victim's face.

¶14 Although the statutory violation asserted in the amended indictment at count 5 is the same as that in the original indictment, it describes a wholly separate factual event, occurring almost two months after the one specified in the original indictment, upon facts never specifically provided to or considered by the grand jury in its probable cause determination, distinguishing this matter from *State v. Bruce*. "This is not a case where only one crime has been committed and there remains a question as to the date on which it occurred or where it occurred. In this case there were two separate and distinct acts of [misconduct involving weapons]," *Mikels*, 119 Ariz. at 563, 582 P.2d at 653, one occurring on December 18, 2013, and a separate event occurring on February 4, 2014. Thus, the record reflects "the indictment was not defective at all," and Rule 13.5 does not apply. *See Freeney*, 223 Ariz. at 113, ¶¶ 19-20, 219 P.3d at 1042.

¶15 Rule 13.5(b) does not permit the State to avoid a defendant's constitutional right that an indictment be based upon probable cause by amending an accurate indictment to pursue the same charge occurring on a different occasion. *See State v. Sanders*, 205 Ariz. 208, 212, 217, ¶¶ 9-10, 37, 68 P.3d 434, 438 443 (App. 2003) (reversing mid-trial amendment to indictment "to conform to the evidence" that a crime different than that originally charged was committed and noting "[a] defendant does not suffer a constitutionally diminished entitlement to notice from the state simply because a trial is being conducted on one charge and evidence of another offense has been admitted."), *overruled in part on other grounds by Freeney*, 223 Ariz. at 113-114, ¶¶ 21-26, 219 P.3d at 1042-43; *State v. Singh*, 4 Ariz. App. 273, 278, 419 P.2d 403, 408 (1966) (disapproving amendment changing recipient of forged document on grounds that the substitution of a different recipient created a separate and distinct crime), *superseded by statute on other grounds as stated in State v. Allen*, 235 Ariz. 72, 75 n.2, ¶ 8, 326 P.3d 339, 342 n.2 (App. 2014).

¶16 Nor is there any authority to support the State's suggestion that Moran impliedly consented to the amendment. To the contrary, the right of the accused to be advised of the charges against him with an ample opportunity to prepare an adequate defense is a fundamental element of due process. *State v. Branch*, 108 Ariz. 351, 354-55, 498 P.2d 218, 221-22 (1972). On this premise, this Court has, on at least one occasion, held that a defendant himself must give actual consent to the amendment of an indictment to ensure due process is satisfied. *State v. Sanders*, 115 Ariz. 289, 293, 564 P.2d 1256, 1260 (App. 1977) (noting in light of fundamental due process concerns "[i]t is therefore not too much to ask that the defendant be apprised of what is occurring and that his consent be secured"). Additionally, the record does not support an implication of consent where

Moran objected to the amendment once the State eventually sought to try him on a set of facts different from the original indictment.

¶17 The State nonetheless argues that Moran was not prejudiced by the amendment because he knew or should have known of the State's intent to proceed on the charge of weapons misconduct in relation to the February 4, 2014 events, as discovery included reference to the seizure of the weapons that followed Moran's arrest. *See Freeney*, 223 Ariz. at 115, ¶ 28, 219 P.3d at 1044 (affirming conviction where violation of Rule 13.5 was harmless beyond a reasonable doubt). This Court has previously rejected the notion that the State may elect to proceed against a defendant on a separate, subsequent act at trial and amend the indictment to conform to its strategy without notice to that defendant. *Mikels*, 119 Ariz. at 563, 582 P.2d at 653. There is no evidence the State intended the information regarding the recovery of the shotgun and other weapons in the vehicle Moran exited prior to his detention to be anything more than additional evidence tending to tie Moran to the December 18, 2013 incident. *See id.* (rejecting suggestion that defendant consented to amendment based on presentation of evidence that may have supported the amended charge, but was clearly admitted for separate purpose). And, nothing within the record prior to the proposed amendment indicates the State intended to pursue a second count of misconduct involving weapons. The mere fact of the disclosure of the seizure of the shotgun is not sufficient to put Moran on notice that he would be tried for a wholly different crime, occurring on a different day than any other event with which he was charged.

¶18 We are likewise unconvinced by the State's contention that Moran "foreclosed any argument" that he has been prejudiced by the amendment because he stated he did not believe the State could prove the crime of misconduct involving weapons occurred as charged, on December 18, 2013. While such an assertion by a defendant may prompt the State to reassess its likelihood of success in prosecuting the charge specified in the original indictment, it does not provide license to assert, through an indictment amended by the trial court, that the grand jury found probable cause the defendant committed a crime based upon a set of circumstances it was never asked to consider. No grand jury has decided Moran should stand trial for a weapons offense that allegedly occurred months after the home invasion. Moran is most certainly prejudiced where "the variation [sought by an amendment] destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury." *Mikels*, 119 Ariz. at 563, 582 P.2d at 653 (citing *Stirone v. United States*, 361 U.S. 212, 215-19 (1960)).

¶19 To permit the State to amend an indictment in the manner presented here would impermissibly compromise the imprimatur of the grand jury. Such a result would be contrary to the essential purpose of the grand jury, which is to stand as a neutral intermediary "between the accuser and the accused." *Maretick v. Jarrett*, 204 Ariz. 194, 197, ¶ 8, 62 P.3d 120, 123 (2003) (quoting *Wood v. Georgia*, 370 U.S. 375, 390 (1962)) (internal quotations omitted); *see also Mikels,* 119 Ariz. at 563, 582 P.2d 653 (describing "very purpose" of requiring indictment by a grand jury is "to eliminate [a defendant's] jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge") (citing *Stirone*, 361 U.S. at 218); *State v. McAllister*, 875 A.2d 866, 877 (N.J. 2005) ("'[T]he grand jury remains a constitutional bulwark against hasty and ill-founded prosecutions and continues to lend legitimacy to our system of justice by infusing it with a democratic ethos.'") (quoting *State v. Fortin*, 843 A.2d 974, 1030-31 (N.J. 2004)). Surrender of that neutrality to the State would open the door to the very dangers of excessive and unreasonable official interference with personal liberty our Constitution protects against.

## CONCLUSION

¶20 On this record, we are not persuaded that Moran's basic due process rights to a finding of probable cause and notice as to the charges against him were satisfied through the wholesale amendment of count five of the original indictment to include events occurring on February 4, 2014, without the matter having been returned to the grand jury. The amendment to the indictment was not authorized under Rule 13.5(b), and the trial court abused its discretion in granting the State's motion. As a result, we accept jurisdiction, vacate the order amending the indictment, vacate the stay entered pending resolution of this special action, and remand to the trial court for further proceedings consistent with this decision.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama