NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JEFFREY ALAN TAYLOR, *Appellant.*

No. 1 CA-CR 18-0479
FILED 5-7-2019

Appeal from the Superior Court in Maricopa County
No. CR2012-145374-001 DT
The Honorable Ronda R. Fisk, Judge

**AFFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

KBunited LLC, Phoenix
By Kerrie M. Droban
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Kenton D. Jones joined.

---

**W I N T H R O P**, Judge:

¶1        Jeffrey Alan Taylor was convicted by a jury of two counts of sexual conduct with a minor, each a class 2 non-dangerous repetitive felony, in violation of Arizona Revised Statutes ("A.R.S.") section 13-1405; and two counts of contributing to the delinquency of a minor, each a class 1 misdemeanor, in violation of A.R.S. § 13-3613.  This appeal is filed in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969).  Counsel for Taylor has advised this court that she has found no arguable questions of law and asks us to search the record for fundamental error.  Taylor was given an opportunity to file a supplemental brief *in propria persona*, which he has done.  Finding no error upon reviewing the record, we affirm Taylor's convictions and sentences.

**FACTS AND PROCEDURAL HISTORY**

¶2        We view the facts in the light most favorable to sustaining the verdicts and resolve all reasonable inferences against Taylor.  *See State v. Fontes*, 195 Ariz. 229, 230, ¶ 2 (App. 1998).

¶3        Taylor began dating the Victim's mother, S.K., when the Victim was seven years old; Taylor and S.K. married when the Victim was fourteen.  On the Victim's seventeenth birthday, she made plans to go to dinner with Taylor and to have a friend spend the night.  Because Taylor worked nights, and because S.K. was out of town for work, the Victim and her friend planned to later get drunk on liquor from Taylor's and S.K.'s cabinet.  Shortly after the teens started drinking, however, they discovered Taylor was home.

¶4        Rather than discipline or reprimand the girls, Taylor began drinking shots of vodka with them.  After taking a few shots, however, Taylor switched to drinking Powerade while continuing to pour vodka shots for the girls.  The Victim and her friend became extremely intoxicated, each throwing up and experiencing periods of "hazy memories."  Both girls passed out shortly thereafter.

¶5  The Victim's next memory was of waking up in the bed belonging to Taylor and S.K. Taylor's face was between her legs near her vagina; the Victim, still drunk and disoriented in the dark room, asked where she was and what was going on, to which Taylor responded, "[s]mack me," stated he "did a bad thing," and told the Victim he had digitally penetrated and put his mouth on the Victim's vagina. The Victim hit Taylor until he removed his head from between her legs, after which she again passed out. She later woke up in the same bed without underwear on, and went to her bedroom, where she discovered her friend and the family dog had been sleeping with the bedroom door shut.

¶6  While at school the next day, the Victim texted Taylor asking if she had asked him to perform those sexual acts on her. Taylor stated that she had, and that he had tried to refuse, but she insisted he continue. Taylor texted that he was "sad about it," that she had pulled his face between her breasts, that he was sorry for hurting the Victim, and that if S.K. found out she would kill him, then kill herself. Despite agreeing to keep it between them, the Victim told S.K. what happened when she returned from her business trip. S.K. called the police; an officer drove to the house and spoke with Taylor at the curb. Taylor admitted to the officer that he had made contact with the Victim's breasts and vagina.

¶7  Shortly thereafter, S.K. travelled to the police station, where she agreed to participate in a confrontation call. During that call, which was recorded by police and presented as evidence at trial, S.K. questioned Taylor about what he did to the Victim; Taylor eventually admitted drinking with the girls and physically touching the Victim's vagina.

¶8  Taylor was arrested and indicted by a grand jury. Taylor was found to be incompetent but restorable pursuant to Arizona Rule of Criminal Procedure ("Rule") 11 in October 2013, but on subsequent evaluation was found restored less than two months later. In the years of pretrial proceedings, Taylor regularly switched between being *pro per* and being represented or aided by at least eight different attorneys. Eventually, the court found him unable to represent himself and ordered in 2017 that he be represented by counsel. Trial finally began in April 2018.

¶9  Taylor waived his right to a jury trial. The State presented documentary evidence to the bench along with the testimony of the Victim, S.K., the Victim's friend, Peoria Police Officers Myers and Hoffman, a forensic interviewer from Phoenix Children's Hospital, and a forensic nurse. The Victim, her friend, S.K., and Officer Myers provided testimony consistent with the recitation of facts in the preceding paragraphs. Further

testimony revealed that during a medical examination following the alleged sexual conduct, the Victim's vagina showed redness, tenderness, and a small tear that began bleeding when swabbed. Officer Hoffman, who conducted a background check on Taylor, discovered Taylor had been indicted in 1994 for sexual crimes in Virginia. The State obtained sentencing documents from Virginia that showed Taylor had been convicted and sentenced for one count of aggravated sexual battery and one count of indecent liberties. Officer Hoffman testified that conviction of the former crime required a finding that Taylor had sexually abused a child under the age of thirteen.

¶10        After the State rested, Taylor's attorney moved for a judgment of acquittal on each count, pursuant to Rule 20; the court denied the motion. For its case, the defense presented the testimony of Bryan Neumeister, the owner of a technical forensics company. Neumeister was questioned regarding whether the audio recordings of the confrontation call had been altered in any way, but ultimately could not draw any conclusions. The defense also presented the testimony of Dr. Harnell, a clinical psychologist, and questioned him regarding the impact of excessive consumption of alcohol on one's recall ability. Dr. Harnell also was unable to offer any definite opinions to the court. Taylor stated to the court that he did not wish to testify.

¶11        After the trial, the court found Taylor guilty of each count. On July 6, 2018, the court held a sentencing hearing in compliance with Taylor's constitutional rights and Rule 26, during which it heard evidence regarding aggravators and mitigators. Ultimately, the court found two aggravators as to each count of sexual conduct with a minor—that (1) the offenses caused physical or emotional harm to the Victim, and (2) that Taylor abused his position of trust over the Victim. The court expressed further concern that Taylor committed these offenses while being a registered sex offender as a result of similar crimes he had been convicted of in Virginia. Finally, the court found some mitigating factors but, on balance, found "the aggravating circumstances are sufficiently substantial to warrant an aggravated sentence."

¶12        Taylor was sentenced as a Category 1 offender. *See* A.R.S. § 13-703(A). The court assessed the maximum sentence as to each count, *see* A.R.S. §§ 13-703(H) (felony counts), -707(A) (misdemeanor counts), and ruled that the sentences would run concurrently, with the longest being ten years' imprisonment, and credited Taylor with 2,142 days of pre-sentence incarceration.

**ANALYSIS**

**¶13**         We review Taylor's convictions and sentences for fundamental error. *See State v. Flores*, 227 Ariz. 509, 512, ¶ 12 (App. 2011). As previously noted, counsel for Taylor has advised this court that after a diligent search of the entire record, she found no arguable question of law; however, in his supplemental brief, Taylor alleges sixty appealable issues.

**¶14**         We have reviewed each issue—many are duplicative,[1] without basis in fact or law,[2] allege no prejudice, are directly contrary to the evidence in the record, or are irrelevant to the legal propriety of the proceedings.  Accordingly, we do not address every issue, but instead focus on those properly raised or with an indicia of sustainability.

      I.     *Issues Raised in Taylor's Supplemental Brief*

      A.    *Double Jeopardy*

**¶15**         Taylor first alleges that because he was convicted of two counts of sexual conduct with a minor, when the counts arose out of a single sexual encounter, he was impermissibly subjected to double jeopardy. Principles of double jeopardy prevent multiple punishments for the same offense.  *Ohio v. Johnson*, 467 U.S. 493, 498 (1984) (citations omitted). Accordingly, whenever a defendant faces multiple charges of the same statutory provision based on one episode, the proper inquiry is whether certain acts within the episode are punishable as discrete offenses.  *State v. Jones*, 185 Ariz. 403, 405 (App. 1995) (citation omitted).  It is well established that "[m]ultiple sexual acts that occur during the same sexual attack may be treated as separate crimes."  *State v. Boldrey*, 176 Ariz. 378, 381 (App. 1993) (citation omitted).

---

[1]     As an example, Taylor alleges ineffective assistance of counsel multiple times.  The proper vehicle for such an allegation is a Rule 32 Petition for Post-Conviction Relief.

[2]     For example, Taylor alleges he is the victim of a "feministic bench trial" composed of "ten . . . biased females against a singular male" defendant.  He also alleges he was improperly tried as a corporation and not as an individual, because his name was typed in all uppercase letters on court documents.

¶16    Because Taylor committed and was convicted for two separate acts—digital penetration of and oral contact with the Victim's vagina—principles of double jeopardy do not apply. *State v. Hill*, 104 Ariz. 238, 240 (1969) ("When several [sexual acts] are committed on the same victim we see no reason why as many counts for each offense cannot be brought, despite the fact the defendant never left his victim's bed during the course of the commission of the acts.").

### B.    *Prejudice Due to Rule 11 Proceedings*

¶17    Taylor argues he was "prejudicially subjected to a Rule 11 proceeding" but does not identify how he was prejudiced.[3] One of Taylor's attorneys filed a Rule 11 motion to have Taylor's mental condition examined after observing signs and symptoms of mental defect—specifically, the attorney noted Taylor's "incomprehensible statements" and "a distinct lack of understanding of his options in the case"; he further noted this was consistent with the reports of "several of [Taylor's] prior attorneys." The court found good cause after a hearing, and granted the motion. In an October 2013 order, after receipt and review of expert medical reports, the court found Taylor unable to understand the nature of the proceedings against him and unable to assist his counsel; however, the court found that he was restorable within fifteen months and therefore ordered treatment pursuant to A.R.S. §§ 13-4510(C), -4511, and -4512(B). Taylor was later found to be restored.

¶18    Taylor alleges no specific prejudice of the Rule 11 proceedings—there is no allegation that they were improper or mishandled—beyond a vague allegation of a violation of due process. Our review of the record reveals no issue with the Rule 11 proceedings, much less any prejudice leading to an improper conviction four years later.

### C.    *Status as Non-Bondable*

¶19    Taylor next argues that he was improperly designated non-bondable, and he is correct. However, that issue was addressed in pretrial proceedings, when Taylor filed a motion to modify release conditions in

---

[3]    In a motion to dismiss for violation of speedy trial rights filed *pro per* by Taylor two weeks after he was adjudicated incompetent to stand trial, Taylor stated his belief that his attorney filed the Rule 11 motion "out of reprisal, retaliations [sic], malice, malevolence, misfeasance and malfeasance" for a bar complaint Taylor had previously filed against his attorney. The court denied the motion.

December 2012, and the motion was granted one week later by a court order setting a $150,000 bond, which was shortly thereafter decreased to $50,000. Accordingly, there is no appealable issue.

### D. *Denial of Right to Self-Representation*

**¶20** Over Taylor's objection, the trial court found that Taylor could not represent himself due to his "demonstrated . . . inability to comply with any laws and any court orders." Taylor argues that such an order abridged his Sixth Amendment right to represent himself pursuant to the Supreme Court's decision in *Faretta v. California*, 422 U.S. 806 (1975).

**¶21** *Faretta* was not the Supreme Court's final word on the right to self-representation. In *Indiana v. Edwards*, the Court addressed the more complicated question of whether, when a criminal defendant is mentally competent to stand trial but "not mentally competent to conduct that trial himself," a state may preclude him from self-representation. 554 U.S. 164, 167 (2008). The Court stated that "insofar as a defendant's lack of capacity threatens an improper conviction or sentence, self-representation in that exceptional context undercuts the most basic of the Constitution's criminal law objectives, providing a fair trial." *Id.* at 176-77. The Court also observed that trials should not just be fair, but "appear fair to all who observe them." *Id.* at 177 (quoting *Wheat v. United States*, 486 U.S. 153, 160 (1988)). The Court concluded that the Constitution allows for judges "to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so." *Id.* at 177-78.

**¶22** The number of frivolous motions filed by Taylor supports the court's decision that Taylor, while competent to stand trial, was not competent to represent himself. Throughout his case, Taylor filed numerous *pro per* motions while represented by counsel that the court, by rule, ignored; however, this did not deter Taylor from continuing to file such motions. Taylor further made countless requests to the court that he be appointed new counsel (whether in a representative or advisory capacity), usually due to claims of their incompetence, and filed additional special actions with this court and with our state supreme court requesting the same. Many of Taylor's other motions were duplicative (similar to his complaints presented in this appeal) and filed despite the objected-to matter having been resolved in prior proceedings. Nearly all of these motions lacked any legal basis, and reflect a lack of understanding of how to conduct a legal defense absent guidance by counsel. On this record, the

superior court did not err by refusing to allow Taylor to proceed to trial *pro per*.

### E. *Lack of Receipt of the Criminal Complaint*

**¶23** A direct complaint was filed against Taylor on August 28, 2012. He was taken into custody the same day, advised of the charges against him, and held non-bondable. One week later, the grand jury issued an indictment, officially putting him on notice of the exact charges.

**¶24** Our rules of criminal procedure do not require that a defendant receive a copy of the complaint against him, and Taylor points to no case, nor does our research uncover one, stating the contrary; rather, the complaint is a pleading that identifies "the essential facts constituting a public offense" and starts the prosecutorial process. Ariz. R. Crim. P. 2.3(a). The law does require, however, that indictments be provided to defendants "to give notice of the offense charged so that the accused may prepare a defense." *State v. Self*, 135 Ariz. 374, 380 (App. 1983) (citation omitted).

**¶25** The record does not support Taylor's contention that he did not receive a copy of the criminal complaint filed against him, and he alleges no fact nor provides any evidence to support the contention. Regardless, even if he did not receive a copy, there was absolutely no prejudice. Taylor litigated the propriety of the grand jury proceedings before the trial court. More importantly, pretrial matters in this case lasted well over five years—Taylor (along with the number of attorneys who assisted him in this matter) had ample time to prepare a defense as to the four counts he faced at trial.

### F. *Lack of Administration of <u>Miranda</u> Rights*

**¶26** "Before the results of any custodial interrogation may be directly used by the state, the authorities must tell the defendant that he has the right to remain silent as well as the right to the assistance of counsel." *State v. Carrillo*, 156 Ariz. 125, 128 (1988) (citing *Miranda v. Arizona*, 384 U.S. 436 (1966)). We have read the entire transcript of Taylor's trial. No testimony was given nor any evidence presented regarding any custodial statements made by Taylor. Accordingly, even if he was not read his *Miranda* rights, such omission would be inconsequential.

### G. *Introduction of Virginia Convictions at Trial*

**¶27** The State filed a motion to admit evidence of Taylor's prior criminal convictions in Virginia for purposes of showing intent, plan, and

lack of mistake pursuant to Arizona Rule of Evidence 404(b), and to establish Taylor's aberrant sexual propensity to have committed the charged crime. *See* Ariz. R. Evid. 404(c). Over Taylor's objection, the court granted the State's motion in a November 2014 order, in which the court provided a thorough analysis of subsections (b) and (c), detailing the sufficiency of the evidence (the jury verdicts from Virginia), considered whether the convictions were relevant and sufficient to establish Taylor's aberrant sexual propensity, and conducted the balancing required by Arizona Rule of Evidence 403. We find no error in the admission of Taylor's prior criminal convictions.

### H. *Sufficiency of the Indictment*

**¶28** Taylor alleges the indictment was insufficient as it did not cite to Arizona law, and claims the State did not have jurisdiction to issue the indictment against him. We have reviewed the State's amended indictment, filed in April 2016, and find both of Taylor's allegations completely without merit.

### I. *S.K. as an Agent of the State During the Confrontation Call*

**¶29** Confrontation calls recorded with the consent of one party are explicitly allowed under Arizona law, A.R.S. § 13-3012(9), and are not violative of the constitution of our state nor its federal counterpart, *State v. Stanley*, 123 Ariz. 95, 102 (App. 1979) (citing *United States v. White*, 401 U.S. 745 (1971); *Hoffa v. United States*, 385 U.S. 293 (1966)); *accord State v. Allgood*, 171 Ariz. 522, 524 (App. 1992). The record reflects that S.K. properly consented to the recording of the confrontation call with Taylor; accordingly, we find no error.

### II. *No Other Error*

**¶30** We have read and considered counsel's brief and fully reviewed the record for reversible error, *see Leon*, 104 Ariz. at 300, and find none. All the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. So far as the record reveals, counsel represented Taylor at all critical stages of the proceedings, and the sentences imposed were within the statutory guidelines. We decline to order further briefing and affirm Taylor's convictions and sentences.

**¶31** Upon the filing of this decision, defense counsel shall inform Taylor of the status of the appeal and of his future options. Counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See*

*State v. Shattuck*, 140 Ariz. 582, 584-85 (1984). Taylor shall have thirty days from the date of this decision to proceed, if he desires, with a *pro per* motion for reconsideration or petition for review.

## CONCLUSION

**¶32** For the foregoing reasons, we affirm Taylor's convictions and sentences.

