831 P.2d 1290

**STATE of Arizona, Appellee,**

v.

**Jerry Wayne ALLGOOD, Appellant.**

**No. 1 CA–CR 89–1588.**

Court of Appeals of Arizona,
Division 1, Department D.

March 24, 1992.

Redesignated as Opinion May 5, 1992.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., and Dennis Staffelbach, Asst. Atty. Gen., Phoenix, for appellee.

John C. Williams, Prescott, for appellant.

## OPINION

GERBER, Presiding Judge.

### FACTS

Appellant Jerry Wayne Allgood was indicted on six counts of sexual conduct with a minor, two counts of sexual abuse and one count of child molestation stemming from four incidents involving his former stepdaughter, who at the time of trial was 14 years old. The trial court directed a verdict of acquittal on the child molestation charge. Appellant was convicted of the other eight counts.

At trial, the victim testified that sexual contact with the appellant began when she was in the fourth grade. She claimed that on one occasion the appellant videotaped their encounter and later erased it by substituting the "Mr. Ed" television show. She reported her sexual conduct with appellant four years after its inception when her mother questioned her about a school paper in which she described molestation. A Mesa police detective asked her to make a "confrontation call" designed to elicit appellant's admissions corroborating her accusations. The conversation was recorded and eventually came into evidence.

The victim testified that she had delayed reporting the appellant's conduct because he threatened to hurt her mother or brother and she feared his violent nature. The Mesa detective testified that child victims of sexual conduct frequently do not report these incidents when they occur in a family setting.

Appellant denied all allegations. He claimed that at the time of the "confrontation call" he was impaired by a combination of asthma medications and lack of sleep.

### Issues on Appeal

The appellant raises the following issues on appeal:

(1) the recording of his telephone conversation with the victim violates the privacy provisions of the Arizona Constitution art. II, § 8;

(2) reversible error in the exclusion of the victim's prior reports of molestation by her stepbrother;

(3) defense counsel was ineffective for failing to object when the police officer testified that he believed the alleged victim and testified as an expert;

(4) the trial court abused its discretion in failing to grant the motion for a new trial based upon juror misconduct.

1. Telephone Recording

■ Monitoring and recording of a telephone conversation with the consent of one party, sometimes referred to as "participant monitoring" or "consent surveillance," is authorized by statute in Arizona. *See*

Ariz.Rev.Stat.Ann. ("A.R.S.") § 13–3012.7.[1] The parties also recognize that the interception at issue here does not violate the fourth amendment to the United States Constitution. *United States v. Caceres,* 440 U.S. 741, 750, 99 S.Ct. 1465, 1470–71, 59 L.Ed.2d 733 (1979); *United States v. White,* 401 U.S. 745, 753, 91 S.Ct. 1122, 1126–27, 28 L.Ed.2d 453 (1971) (plurality opinion). Arizona cases are in accord. *State v. Stanley,* 123 Ariz. 95, 597 P.2d 998 (App.1979).

■ Appellant nonetheless argues that the "confrontation call" was illegal under the Arizona Constitution art. II, § 8, which states that "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." He contends that the police were required to obtain a warrant before the call was placed. In support of this contention, he notes that the Arizona Supreme Court has viewed this constitutional provision to be more protective in the context of a physical search of a home than is the fourth amendment. *State v. Ault,* 150 Ariz. 459, 463, 724 P.2d 545, 549 (1986); *State v. Bolt,* 142 Ariz. 260, 264, 689 P.2d 519, 523 (1984); *State v. Martin,* 139 Ariz. 466, 473, 679 P.2d 489, 496 (1984).

In *Bolt,* 142 Ariz. at 264, 689 P.2d at 523, the supreme court considered that the fourth amendment might not bar warrantless entry of a home in the absence of exigent circumstances but found that art. II, § 8 effected such a proscription. The court stated that "[w]hile Arizona's constitutional provisions generally were intended to incorporate the federal protections, *Malmin v. State,* 30 Ariz. 258, 261, 246 P. 548, 549 (1926), they are specific in preserving the sanctity of homes and in creating a right of privacy. *Id.* at 262–63, 246 P. at 549." The more expansive interpretation of art. II, § 8 has generally not applied beyond the home search context. We conclude that the "confrontation call" comport-

ed with our state statute and did not violate the state constitution.

## 2. Exclusion of Prior Reports

■ In April 1986, during the time period when sexual contact with this appellant was occurring, the victim reported to her school principal and to Child Protective Services that she had been molested by her stepbrother. At the time she made no accusations against appellant. The state moved to preclude defense counsel from impeaching the victim with her failure to report appellant's molestation of her. After ascertaining that this testimony would not be used to refute any physical or scientific evidence or to show that unsubstantiated charges were made in the past, the court granted the motion. The court found that the proposed impeachment had "minimal" probative value which was "substantially outweighed by the danger of unfair prejudice ..." The victim had previously explained to the police that the delay was caused by her fear of the appellant's threats and violence and her own shame. The trial judge ruled that references to the allegations against her stepbrother would not be allowed unless the girl's responses regarding the delay differed from those already offered.

While the right to impeach by omission is well-recognized in Arizona, it has been approved in cases in which a defendant at trial embellishes or varies from an exculpatory statement previously made to police. *State v. Vaughn,* 147 Ariz. 28, 708 P.2d 453 (1985); *State v. Tuzon,* 118 Ariz. 205, 575 P.2d 1231 (1978); *State v. Moya,* 140 Ariz. 508, 683 P.2d 307 (App.1984); *State v. Robinson,* 127 Ariz. 324, 620 P.2d 703, *cert. denied,* 450 U.S. 1044, 101 S.Ct. 1765, 68 L.Ed.2d 242 (1981). These cases, however, do not address prior unrelated proceedings. The United States Supreme Court in *Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980)· noted that "[c]ommon law traditionally · has allowed

---

1. The provision exempts from the general prohibition against interception of communications "... the interception of any wire, electronic, or oral communication by any person, *if the interception is effected with the consent of a party to*

*the communication* or a person present during the communication." (Emphasis added.) *See also* A.R.S. § 13–3005. (penalizing as a class 5 felony interceptions effected "without the consent of either a sender or receiver thereof.")

witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted."

In *State v. Hines,* 130 Ariz. 68, 70, 633 P.2d 1384, 1386 (1981), the Arizona Supreme Court held that:

Whether an omission to state a fact constitutes an inconsistency sufficient to discredit a witness depends at least in part upon the circumstances under which the prior statement was made. A prior omission will constitute an inconsistency only where it was made under circumstances rendering it incumbent upon the witness to, or be likely to, state such a fact.... The rationale for allowing impeachment in these circumstances is that "a *failure to assert* a fact, when it would have been natural to assert it, amounts in effect to assertion of the non-existence of the fact." IIIA Wigmore, *Evidence* § 1042 (Chadbourn rev. 1970). The underlying test as stated in *Wigmore,* supra, is: would it have been natural for the person to make the assertion in question?

(Emphasis in original; citations and footnote omitted.) Here, it is understandable that the victim not make charges against her stepfather in the unrelated prior proceeding especially since he was assisting her in making those reports. It is equally plausible that she would not report her stepfather's conduct out of the same fear which she acknowledged.

The victim was asked on direct examination why she didn't tell anybody about the incidents with this defendant during the five years they were occurring. Her response was that she was intimidated by his threats. Defendant's counsel on cross-examination was allowed to delve extensively into this failure to report the ongoing molestation.

The jury was afforded an opportunity to determine whether the explanation for the delay was reasonable. The United States Supreme Court in *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) held that:

[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.' *Davis v. Alaska,* [415 U.S. 308, 318, 94 S.Ct. 1105, 1110, 1111, 39 L.Ed.2d 347 (1974)].

Appellant sought to highlight the disparity as to why the victim did not report her stepfather's conduct when she had reported that of her stepbrother. The trial judge allowed questioning as to why the girl waited so long to report the step-father's molestation. Given her fear of the stepfather and his threats against her, her failure to report his molestation was defensible. The court adopted a fair procedure in allowing neutral questioning about her delay in reporting.

■ A limitation of cross-examination by the trial court will not be disturbed on appeal unless the record shows an abuse of discretion. We do not find it here.

### 3. Ineffective Assistance

■ Appellant contends that trial counsel was ineffective in failing to object to testimony from the investigating detective about his belief in the victim's accusations. He claims this was improper expert testimony under *State v. Moran,* 151 Ariz. 378, 728 P.2d 248 (1986) and *State v. Lindsey,* 149 Ariz. 472, 720 P.2d 73 (1986). However, a claim of ineffective assistance of counsel may not be asserted for the first time on appeal. It must be first presented to the trial court by a petition for postconviction relief before we can consider it. *State v. Carver,* 160 Ariz. 167, 175, 771 P.2d 1382, 1390 (1989).

### 4. Juror Misconduct

■ Appellant contends that members of the jury committed misconduct by conducting their own investigation and discussing evidence not admitted at trial. In a sworn telephonic interview following trial, a juror stated that an unidentified male juror re-

ported that he had consulted a television guide during trial and determined that "Mr. Ed" was still being broadcast on TV in reruns. Appellant alleges that this information tended to corroborate the victim's testimony regarding the videotaped sex acts. The juror further testified that she had consulted her mother, an asthmatic, about whether the combination of appellant's medications impaired his judgment. The juror admits she was informed that this was possible.

■ When extraneous information reaches a jury, a defendant is entitled to a new trial unless the appellate court can determine beyond a reasonable doubt that the extraneous information did not contribute to the verdict. *State v. Glover,* 159 Ariz. 291, 767 P.2d 12 (1988). Here, the juror's investigation regarding "Mr. Ed" demonstrates no such prejudice since the male juror asserted only that the program was telecast on the date of the victim's trial testimony rather than at the time of the alleged incident. There is no showing of any connection between the crimes charged here and the content of "Mr. Ed." Likewise, the information regarding the medication could not have adversely affected the verdict since it confirmed defendant's claim that his medication impaired his judgment. We find no juror misconduct harmful to the appellant.

## CONCLUSION

Finding no error, we affirm the convictions and sentences.

TAYLOR and McGREGOR, JJ., concur.