NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

TONY DENG, *Appellant*.

No. 1 CA-CR 15-0638
FILED 2-9-2017

Appeal from the Superior Court in Maricopa County
No. CR2011-153034-001
The Honorable Hugh Hegyi, Judge
The Honorable Stephen A. Gerst, Judge, *Retired*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

Robert J. Campos & Associates, PLC, Phoenix
By Robert J. Campos
*Counsel for Appellant*

**MEMORANDUM DECISION**

Chief Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Patricia A. Orozco joined.[1]

**B R O W N**, Chief Judge:

¶1        Tony Deng appeals from his convictions and sentences for ten counts of sexual conduct with a minor under the age of fifteen and one count of sexual abuse against a minor under the age of fifteen.  He argues the trial court erred in denying his motion to suppress and excusing potential jurors who did not understand English.  Finding no reversible error, we affirm.

**BACKGROUND[2]**

¶2        Deng's step-daughter ("the victim"), then 16 years old, initiated several recorded confrontation telephone calls with Deng.  He answered the calls while at work.  The victim asked to speak to him about "some things" and he indicated that was "alright," but then asked her to call him back in twenty minutes.  The victim promptly called Deng again and Deng answered the phone.  The victim indicated she needed to talk and proceeded to ask Deng questions about their past sexual encounters.  Deng asked if he could call her back.  She insisted, however, on speaking right away and Deng told her to "call back in about five minutes," and he hung

---

[1]        The Honorable Patricia A. Orozco, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2]        Because no evidentiary hearing was held on Deng's motion to suppress, the factual recitation pertaining to that motion is based on the factual assertions made in the motion and the State's response that appear to be incontrovertible, as well as the transcript of the confrontation call. Although the parties refer to trial testimony in arguing the point on appeal, we do not consider that evidence because it was not before the court when it ruled on the suppression motion. *See State v. Spears*, 184 Ariz. 277, 284 (1996) ("In reviewing the denial of a motion to suppress, this court looks only at the evidence presented to the trial court during the suppression hearing.").

up the phone. The third time the victim initiated a call, Deng asked, "Nobody around you, right . . . cuz I had, there's somebody else around me, that's why I [couldn't] talk." The victim indicated she was alone and then continued to question Deng about their past sexual encounters. Deng admitted to penetrating her vagina with his penis, performing and receiving acts of oral sexual contact, and using a sex toy with her. Deng was subsequently arrested and charged with ten counts of sexual conduct with a minor and one count of sexual abuse.

¶3 Deng moved to suppress the confrontation call, asserting it was involuntary and unconstitutional. At the conclusion of oral argument, the trial court denied the motion, noting it had listened to the recording of the call and did not find the "victim's statements to the defendant or requests of the defendant overbore [Deng's] will." The court noted that Deng "could [have,] and in fact did on one occasion[,] hang the phone up." The court further found that Deng spoke with the victim willingly and her "trickery at the behest of the State" did not amount to coercion. Deng filed a motion to reconsider, alleging "new identified violations of law." The court denied the motion.

¶4 At the subsequent jury trial, before bringing the jury venire into the courtroom, the bailiff informed the court that some potential jurors asked to be excused, including two "who don't speak English and we don't have interpreter services for jurors." The court confirmed that each of the jurors had asked to be excused and then asked counsel if there were any objections to excusing the potential jurors. Counsel for both parties answered "no objection" and the court excused the jurors. During the second day of jury selection, two more jurors indicated they had difficulty speaking and understanding English. The court asked if there was any objection by counsel to excusing the potential jurors. Counsel for both parties answered "no" and both jurors were excused.

¶5 The jury found Deng guilty as charged and the court sentenced him to consecutive prison terms of life with the possibility of release for thirty-five years on the first two counts of sexual conduct with a minor, twenty years on each of the remaining eight counts of sexual conduct with a minor, and five years on the sexual abuse count. This timely appeal followed.

## DISCUSSION

### A. Confrontation Call

¶6 Deng argues the trial court abused its discretion in denying his motion to suppress the confrontation call because: (1) the victim was acting as a state agent when she made the call; (2) Deng had a heightened expectation of privacy in the phone call based on his "unique relationship" with the victim, thus implicating a violation of the Fourth Amendment; (3) Deng's statements were not voluntary and are protected by Arizona Revised Statutes ("A.R.S.") section 13-3988; and (4) the call violated the Fifth Amendment and Sixth Amendment.

¶7 We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion, but review the court's legal conclusions de novo, including whether there were constitutional violations. *State v. Peterson*, 228 Ariz. 405, 407-08, ¶ 6 (App. 2011) (citations omitted). If the court's ruling was legally correct for any reason, we are obliged to affirm the ruling. *State v. Perez*, 141 Ariz. 459, 464 (1984).

### 1. Voluntariness

¶8 Deng argues the confrontation call was not voluntary because the victim used psychological pressure at the behest of the police to overcome his will and illicit incriminating statements relevant to her allegations of sexual assault. He further maintains that because a police officer suggested and arranged the confrontation call in an attempt to illicit an incriminating response, the victim was acting as a state agent.

¶9 "Monitoring and recording of a telephone conversation with the consent of one party . . . is authorized by statute in Arizona." *State v. Allgood,* 171 Ariz. 522, 523-24 (App. 1992); *see* A.R.S. § 13-3012(9). Nevertheless, "[t]o be admissible, [Deng's] statement must be voluntary, not obtained by coercion or improper inducement." *State v. Ellison*, 213 Ariz. 116, 127, ¶ 30 (2006); A.R.S. § 13-3988. The State has the burden of proving, by a preponderance of the evidence, that a statement was voluntary. *State v. Amaya–Ruiz*, 166 Ariz. 152, 164 (1990). A statement was involuntarily made if there was (1) "coercive police behavior" and (2) "a causal relation between the coercive behavior and defendant's overborne will." *State v. Boggs*, 218 Ariz. 325, 335-36, ¶ 44 (2008). In evaluating voluntariness, "the trial court must look to the totality of the circumstances surrounding the confession and decide whether the will of the defendant [was] overborne." *State v. Lopez*, 174 Ariz. 131, 137 (1992).

¶10            The trial court did not err in determining that Deng's admissions to the victim were voluntary.  The court listened to the recorded phone call and was able to evaluate the tone and nuances of the conversation.    The court properly considered the totality of the circumstances and found Deng's statements to the victim during the recorded phone call were voluntary, pointing to the instances during the call when he could have, and twice did, end the conversation.  The court also concluded that the victim "engaged in trickery at the behest of the State apparently, but that does not amount to coercion."[3]  Likewise, the court properly could conclude the demands of the victim, including her expressed urgency to speak to Deng about past sexual abuse, did not exert upon him such pressure as to render his statements to her involuntary.  *See State v. Keller,* 114 Ariz. 572, 573 (1977) (finding that the victim's demands for the return of her property, including a threat to call police, did not exert such pressure to render defendant's statements involuntary).  Nor are we persuaded by Deng's argument that his "unique relationship" to the victim, standing *in loco parentis* to the victim, rendered his statements involuntary. *See State v. Wright*, 161 Ariz. 394, 398 (App. 1989) (holding that the mere fact that the police officer who questioned the defendant was his father was not enough to render the confession involuntary).

## 2.      Constitutional and Statutory Violations

¶11            Deng asserts that the confrontation call violated the Fourth Amendment, asserting he had a "strong[] and legitimate expectation of privacy" in the confrontation phone call with the victim because he stood *in loco parentis* and because he took steps to protect his privacy.  It is well established that obtaining statements through a confrontation call does not violate the Fourth Amendment.  *See Allgood*, 171 Ariz. at 524 (holding that a confrontation call arranged by police between minor victim and stepfather designed to elicit admissions corroborating accusations of sexual assault comported with state statute and state constitution); *see also State v. Stanley*, 123 Ariz. 95, 102 (App. 1979) ("Under the Fourth Amendment, there is no invasion of privacy in monitoring, recording and introducing into evidence a telephone conversation where one party has given prior consent to the interception.").

¶12            Nor do Deng's Fifth Amendment claims that his statements "were the result of [a] compulsion to speak," at the behest of victim—a state

---

[3]      Because there was no evidentiary hearing requested or held on the motion to suppress, the source for the observation that any "trickery" in the call was "at the behest of the State" is unclear on appeal.

agent—alter the result. Assuming, *arguendo*, that the victim was a state agent, Deng was not entitled to *Miranda* warnings because during the phone call he was not in custody or otherwise deprived of his freedom of action. *See Keller*, 114 Ariz. at 573 ("The United States Supreme Court has made it clear that [*Miranda*] applies only to questioning initiated by law enforcement officers [a]fter a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.") (internal quotation and citation omitted). Here, the incriminating statements were given during a phone call while Deng was at work. Likewise, because Deng was not under arrest or detained at the time of the phone call, his reliance on A.R.S. § 13-3988 is misplaced.[4]

¶13 Deng also contends his Sixth Amendment rights were violated because as soon as he became "the accused," he "had a right to have counsel act as a buffer between [himself] and the State." However, and again assuming *arguendo* the victim was a state agent, Deng was not arrested or charged with a crime until after the phone call, meaning his Sixth Amendment right to counsel had not yet attached. *See State v. Fulminante*, 161 Ariz. 237, 246 (1988) ("The sixth amendment does not attach during pre-indictment questioning.").[5]

---

[4] Before a confession is received in evidence, "the trial judge shall . . . determine any issue as to voluntariness." A.R.S § 13-3988. Subsection (C) clarifies that

> [n]othing contained in this section shall bar the admission in evidence of any confession made or given voluntarily by any person to any other person without interrogation by anyone, or at any time at which the person who made or gave such confession was not under arrest or other detention.

*Id*.

[5] Based on the narrow record before us, we find that the confrontation call was intercepted and recorded pursuant to the victim's prior consent, comported with A.R.S. § 13-3012(9), and did not violate the state or federal constitution. *See Allgood*, 171 Ariz. at 524; *see also Stanley*, 123 Ariz. at 102. Thus, we reject Deng's assertion that the confrontation call was inadmissible for "deterrence" reasons.

### B.    Excusing Jurors

¶14    Deng argues the trial court erred when it excluded non-English speaking jurors before determining whether the jurors could actually understand English.  Because Deng failed to raise this argument in the trial court, we review only for fundamental error resulting in prejudice. *State v. Henderson*, 210 Ariz. 561, 568, ¶¶ 23-24 (2005).

¶15    By statute, "on timely application" a judge or commissioner shall "temporarily excuse from service as a juror" persons who are "not currently capable of understanding the English language."  A.R.S. § 21-202(B)(3); *see also State v. Cota*, 229 Ariz. 136, 142, ¶ 15 (2012) (rejecting constitutional challenge to A.R.S. § 21-202(B)(3)).  Here, the trial court was informed that four non-English speaking potential jurors had asked to be excused because they did not understand English.  Neither party objected to excusing the potential jurors; in fact, counsel for both parties acquiesced in the court's suggestion that they be excused.  And Deng does not challenge the factual basis for excusing the potential jurors.  Accordingly, given A.R.S. § 21-202(B)(3), Deng has shown no error in excusing the four non-English speaking potential jurors.

## CONCLUSION

¶16    For the foregoing reasons, we affirm Deng's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:  AA