NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JACOB ALI FARID, *Appellant*.

No. 1 CA-CR 19-0527
FILED 07-23-2020

Appeal from the Superior Court in Mohave County
No. S8015CR201802032
The Honorable Derek C. Carlisle, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

Rideout Law P.L.L.C., Lake Havasu City
By Bradlee Rideout, Wendy Marcus
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge David B. Gass delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maria Elena Cruz joined.

**G A S S**, Judge:

¶1　　　　Jacob Ali Farid appeals his convictions for importing marijuana and possession of marijuana for sale.[1] Farid argues the superior court erred when it: (1) on the morning trial was to begin, held an evidentiary hearing on his motion to suppress and failed, *sua sponte*, to continue the trial after new evidence was revealed; (2) denied his motion to suppress; and (3) allowed the arresting and investigating officers to give expert testimony. Because the superior court did not abuse its discretion or commit legal error, Farid's convictions are affirmed.

## FACTUAL[2] AND PROCEDURAL HISTORY

¶2　　　　The State charged Farid with transporting marijuana for sale or importing marijuana into the state (count 1) and possession of marijuana for sale (count 2), both class 2 felonies. The charges stemmed from a traffic stop conducted by Todd Dickinson, a trooper with the Department of Public Safety's Border Strike Force K-9 Unit.

¶3　　　　According to the evidence at the suppression hearing, Dickinson stopped Farid for driving a lifted truck without rear mud flaps. *See* A.R.S. § 28-958.01. When Farid could not provide his registration or insurance, Dickinson asked him to exit the truck and walk back to the patrol vehicle. Farid's girlfriend remained in the truck. As Dickinson

---

[1]　　A separate opinion filed simultaneously with this memorandum decision, *State v. Farid*, 1 CA-CR 19-0527, rejects Farid's jury-instruction argument. *See* Ariz. R. Sup. Ct. 111(h); Ariz. R. Crim. P. 31.19(f).

[2]　　This court reviews the facts in the light most favorable to sustaining the jury's verdicts, resolving all reasonable inferences against Farid. *See State v. Felix*, 237 Ariz. 280, 283, ¶ 2 (App. 2015). This court does not reweigh the evidence or reassess witness credibility, because those are jury functions. *See State v. Williams*, 209 Ariz. 228, 231, ¶ 6 (App. 2004).

began drafting a repair order, he asked Farid where the couple was traveling. Farid replied they were returning to Houston from Lake Tahoe. Dickinson testified Farid appeared nervous, his hands shaking as he handed over his driver's license. The timeline Farid gave for their trip was also contradictory. Specifically, Farid said they arrived in Lake Tahoe on December 10, stayed for three days, and were driving straight back to Houston. Yet the traffic stop did not occur until December 16. Further, Dickinson knew of news reports indicating heavy snow around Lake Tahoe but saw no signs of the grime he would expect on a truck driven through inclement weather.

¶4        Because Farid did not have a copy of the truck's registration, Dickinson returned to the truck to get the vehicle identification number. While doing so, Dickinson asked Farid's girlfriend about the trip. Her responses were vague. She said she and Farid had been in California for "a couple of days" but she did not know specifically where. In fact, she was unable to say whether they had been in the northern or southern part of the state. Dickinson returned to his patrol vehicle, where he finalized and issued the repair order to Farid.

¶5        Dickinson then asked Farid a series of questions about whether there were controlled substances—including marijuana—in the truck. Dickinson also asked to search the truck and conduct a K-9 sniff. Farid said no to each question. Despite the lack of consent, Dickinson deployed his dog, Lorka.

¶6        Lorka alerted to the left rear corner of the truck, indicating the presence of controlled substances. Dickinson opened the tailgate and found several vacuum-sealed packages. Each package bore a prescription label identifying it as "Medical Cannabis California" and certifying the contents were packaged in compliance with California's medical marijuana statutes. After Dickinson handcuffed Farid, Farid spontaneously told Dickinson "it was all his and that he was just trying to make money." Farid also said his girlfriend was not involved.

¶7        Following Farid's arrest, Dickinson oversaw a detailed search of the truck. Josh Torrey, a detective with the Arizona Department of Public Safety, assisted with the search. In total, Dickinson and Torrey found 214 one-pound packages of marijuana.

¶8        In his motion to suppress, Farid argued his statements and the physical evidence resulted from an illegal search and seizure. Specifically, Farid argued Dickinson did not have reasonable suspicion to justify extending the traffic stop and deploying Lorka. Farid further

argued Lorka had a high false-positive rate, rendering her alert insufficient to establish probable cause for a search of his truck.

¶9        The superior court held an evidentiary hearing on the motion to suppress on August 13, 2019—the day Farid's trial began. Dickinson, the only witness, offered the following reasons for suspecting Farid of illegal activity and deploying Lorka: (1) Farid's continued nervousness throughout the stop; (2) his inconsistent statements about the timeline for his trip; (3) his girlfriend's vague answers about their trip and her inability to say whether they had been in northern or southern California; (4) the use of "a diverted path versus a direct route" from Lake Tahoe to Houston; and (5) the absence of "snow related grime" on the truck despite news reports indicating Lake Tahoe was "snowed in." Dickinson also revealed—for the first time—his use of the License Plate Recognition system (LPR) before stopping Farid. Because Dickinson's report contained no mention of LPR data, the superior court excluded trial testimony on this subject.

¶10        Regarding Lorka's reliability, Dickinson testified to the dog's narcotics-specific training, and the State offered copies of her training records—showing a 96 percent accuracy rate—into evidence.

¶11        After a short recess to consider the testimony and other evidence, the superior court denied Farid's motion. The court specifically found (1) there were "reasonable grounds to [initially] detain the vehicle," (2) Dickinson identified sufficient facts to justify his continued detention of Farid and to deploy Lorka, and (3) based on Lorka's training and reliability, her alert provided sufficient probable cause to search the truck. The court then recessed before starting jury selection.

¶12        During the recess, Farid filed a motion in limine to prevent Dickinson and Torrey from offering expert testimony identifying the substance in the packages as marijuana. Farid argued the State (1) failed to list any expert witnesses in its pretrial disclosures, and (2) "disclosed no reports, training or other information" permitting the named witnesses to give an expert opinion.

¶13        Though the State failed to disclose Dickinson and Torrey as experts, it did disclose them as officers involved in the arrest and produced their reports. In the reports, Dickinson and Torrey said they knew the packages taken from Farid's truck contained marijuana based on their training and experience. The superior court, therefore, found the State disclosed the substance of the proposed expert testimony and Farid was not prejudiced by the failure to disclose the officers as experts.

Accordingly, Dickinson and Torrey could "opine whether the substance is marijuana based on their training and experience."

¶14 The following day, the jury found Farid guilty on both counts. The superior court sentenced Farid to concurrent 4-year terms of imprisonment with 37 days' presentence incarceration credit. Farid timely appealed the convictions. Jurisdiction is proper under Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21.A.1, 13-4031, and 13-4033.A.1.

**ANALYSIS**

I. **The superior court did not err by holding the suppression hearing on the morning of trial and not, *sua sponte*, continuing the trial.**

¶15 The superior court "has broad discretion over the management of its docket," and this court will "not substitute [its] judgment for that of the [superior] court in the day-to-day management of cases." *See Findlay v. Lewis*, 172 Ariz. 343, 346 (1992). Deference is particularly important when, as here, the superior court acted within its expressly provided discretion. *See* Ariz. R. Crim. P. 16.1(b) ("The court may modify motion deadlines.").

¶16 Three months before the trial began, the superior court held a status conference. Farid's counsel said she intended to file a motion to suppress. The superior court set a briefing schedule, which Farid's counsel did not follow, filing the motion to suppress five weeks late and less than a month before trial was scheduled to begin. The superior court initially denied the motion as untimely, later setting it for a hearing on the first morning of trial because the Arizona Supreme Court ordered it to consider the motion. The timing of the Supreme Court's order was a challenge, coming the day before trial was set to begin. On this record, the superior court did not abuse its discretion by conducting the evidentiary hearing on the morning of trial. *See Findlay*, 172 Ariz. at 346.

¶17 Farid argues the superior court erred by not, *sua sponte*, continuing the trial "once it learned that [Dickinson] had failed to disclose" his use of the LPR. Farid, however, did not request a continuance after the evidentiary hearing or otherwise object to the superior court allowing the trial to begin as scheduled. This court, therefore, limits its review to fundamental error. *See State v. Henderson*, 210 Ariz. 561, 568, ¶ 22 (2005). "On fundamental error review, the defendant has the burden of proving that the court erred, that the error was

fundamental in nature, and that he was prejudiced thereby." *State v. Meeds*, 244 Ariz. 454, 461, ¶ 13 (App. 2018).

¶18 Nothing in this record suggests a continuance was necessary or its absence deprived Farid of a fundamentally fair trial. And Farid has shown no prejudice. Indeed, the superior court precluded the LPR evidence. Farid now asserts this sanction "was an insufficient remedy," but he does not say why. Farid, therefore, is not entitled to relief. *See State v. Cotten*, 228 Ariz. 105, 107, ¶ 4 n.3 (App. 2011) (no error when defendant "not only fails to point out authority supporting [his] proposition . . . but he does not develop any argument on this issue.").

## II. The superior court did not err when it denied Farid's motion to suppress.

¶19 Farid argues he was unlawfully detained in violation of his rights under both the United States and Arizona Constitutions. Specifically, he argues Dickinson did not have sufficient justification to continue the traffic stop after issuing the repair order.

¶20 When reviewing a decision on a motion to suppress evidence based on an alleged violation of the Fourth Amendment and Article 2, Section 8, of the Arizona Constitution, this court defers to the superior court's factual findings, including witness credibility and the reasonableness of inferences drawn by the officer. *State v. Teagle*, 217 Ariz. 17, 22, ¶ 19 (App. 2007). Mixed questions of law and fact, however, such as "whether the totality of the circumstances warranted an investigative detention," are reviewed *de novo. See id.* Though Arizona's Supreme Court has interpreted Article 2, Section 8, to provide greater protection than the Fourth Amendment under certain circumstances, this interpretation "has generally not applied beyond the home search context." *See State v. Allgood*, 171 Ariz. 522, 524 (App. 1992). In fact, Arizona has recognized no difference when considering traffic stops. *See Teagle*, 217 Ariz. at 24-25, ¶¶ 27-29.

¶21 A routine traffic stop is "more analogous to a so-called 'Terry stop' . . . than to a formal arrest." *See Berkemer v. McCarty*, 468 U.S. 420, 439 (1984) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). Accordingly, "the duration of the officer's inquiries must extend only so long as to effectuate the purpose of the traffic stop or any related safety concerns." *State v. Angulo-Chavez*, 247 Ariz. 255, 258, ¶ 7 (App. 2019) (citing *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015)). The officer must then allow the driver to leave "without further delay or questioning unless: (1) the encounter between the officer and the driver ceases to be a detention, but

becomes consensual, or (2) during the traffic stop the officer gains a reasonable and articulable suspicion that the driver is engaged in illegal activity." *Teagle*, 217 Ariz. at 23, ¶ 22 (internal quotation omitted).

**¶22** "By definition, reasonable suspicion is something short of probable cause." *State v. O'Meara*, 198 Ariz. 294, 296, ¶ 10 (2000). Though a mere hunch is insufficient, the Fourth Amendment and Article 2, Section 8, of the Arizona Constitution require only "some minimal level of objective justification for" extending the stop, and police need not "rule out the possibility of innocent explanations." *See State v. Evans*, 237 Ariz. 231, 234, ¶¶ 7, 11 (2015) (internal citations omitted).

**¶23** After issuing Farid a repair order for the traffic violation, Dickinson asked for permission to search the truck. At that point, Dickinson's purpose for the stop was complete. After Farid refused to consent to a search, his continued detention was non-consensual. Dickinson, therefore, could not further detain Farid and deploy Lorka without a reasonable suspicion Farid was involved in criminal activity. *See Teagle*, 217 Ariz. at 23, ¶ 20. Given the evidence presented at the suppression hearing, viewed in its totality, the superior court did not err in concluding Dickinson had reasonable suspicion to continue to detain Farid and to deploy Lorka. *See id.* at 24, ¶ 25 (courts "must look at all of the factors . . . and examine them collectively").

**¶24** Farid also argues Lorka's alert did not give Dickinson probable cause to search the truck. Given Lorka's training and certification, as discussed above, the superior court did not abuse its discretion in rejecting this argument. *See State v. Weinstein*, 190 Ariz. 306, 310-11 (App. 1997) (trained drug-detection dog's alert provides probable cause to search vehicle without a warrant).

### III.   The superior court did not abuse its discretion by allowing Dickinson and Torrey to testify as experts.

**¶25** Farid argues the superior court erred when it allowed Dickinson and Torrey to testify as experts because: (1) the State did not timely disclose them as experts; and (2) they were not qualified.

#### A.   The State adequately disclosed the substance of Dickinson's and Torrey's testimony.

**¶26** This court reviews the superior court's assessment of the adequacy of disclosure under Rule 15.1 for an abuse of discretion. *State v. Roque*, 213 Ariz. 193, 205, ¶ 21 (2006), *disagreed with on other grounds by*

*State v. Escalante–Orozco*, 241 Ariz. 254, 267, ¶ 14 (2017). A superior court abuses its discretion when its reasoning is legally incorrect, clearly untenable, or otherwise constitutes a denial of justice. *See State v. Penney*, 229 Ariz. 32, 34, ¶ 8 (App. 2012).

**¶27**　　　　The State did not formally disclose either Dickinson or Torrey as expert witnesses as required by Rule 15.1. The State, however, did disclose the officers' reports, which contained the substance of the officers' anticipated expert testimony regarding the identification of the substance in Farid's truck as marijuana. Specifically, the reports indicated the officers knew, based on their "training and experience," the sealed packages contained marijuana. Farid's counsel was aware of the disclosure in the reports and also conceded she was aware of case law indicating law enforcement officers can identify marijuana based on their training and experience. The State's disclosure regarding the officers' identification of marijuana, therefore, was adequate. *See Roque*, 213 Ariz. at 205, ¶ 21. Accordingly, the superior court did not abuse its discretion when it found Farid was not prejudiced when the State formally failed to disclose the officers as experts for the purpose of identifying marijuana. *See Penney*, 229 Ariz. at 34, ¶ 8.

> ### B. Dickinson and Torrey were qualified to testify about the identification and value of marijuana.

**¶28**　　　　Farid next challenges Dickinson's and Torrey's testimony under Rule 702. Farid argues the testimony was not based on sufficient facts and was not the product of reliable principles and methods. Farid also attacks the reliability of Dickinson's and Torrey's application of the principles and methods in this case.

**¶29**　　　　Yet Farid did not object to the foundation for Dickinson's testimony at trial when he identified the substance as marijuana or gave his opinion that it was "high-grade marijuana" based on its packaging. Farid also failed to object to either of the officers' testimony about how much the marijuana was worth. Accordingly, this court will review only for fundamental error. *See Henderson*, 210 Ariz. at 568, ¶ 22. Farid, therefore, must prove the superior court erred, the error was fundamental in nature, and he was prejudiced. *See Meeds*, 244 Ariz. at 460-61, ¶ 13.

**¶30**　　　　Before Dickinson identified the substance as marijuana and testified about its value, he described his extensive training and experience as well as the principles and methods he applied. Though Dickinson did not open any of the packages in Farid's truck, one side of each of the packages was transparent, allowing the contents to be seen.

Dickinson, therefore, did not need to open the packages to be able to testify they contained "marijuana buds." Further, each package was labeled "Medical Cannabis California." The label on each package certified its contents were packed in compliance with California's medical marijuana statutes. *See* Cal. Health & Safety Code §§ 11362.5 and 11362.7.

**¶31** Further, the State introduced several of the packages as evidence at trial. The jury, therefore, could see the packages first-hand and weigh the credibility of Dickinson's identification. *See Williams*, 209 Ariz. at 231, ¶ 6. Finally, immediately after Dickinson placed Farid under arrest, Farid said everything in the vehicle was his, "that he was just trying to make money," and his girlfriend was not involved, suggesting Farid understood the illegal and valuable nature of his cargo.

**¶32** Given Dickinson's training and experience, his ability to see the packages' contents without opening them, the packages' labels, Lorka's certification as a drug-detection dog, her alert on the truck, and Farid's statements, the superior court did not err when it allowed Dickinson to identify the contents of the packages as marijuana. *See State v. Jonas*, 162 Ariz. 32, 34 (App. 1988), *aff'd as modified* (1990) ("That a substance is an illicit drug can be proved by circumstantial evidence.").

**¶33** The same is true of the valuation testimony. Both Dickinson and Torrey described their expert qualifications and the bases for determining the value of marijuana. Torrey valued the marijuana at "over $800,000" based on his experience. Dickinson valued it at between $214,000 and $856,000 depending on where it was sold. The jury accepted the lowest estimate of $214,000. This court finds no error, let alone fundamental error. *See Meeds*, 244 Ariz. at 460-61, ¶ 13.

## CONCLUSION

**¶34** For the above reasons and those in the related, simultaneously-filed opinion, Farid's convictions are affirmed.

