NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JOSHUA D. VALVANO, *Appellant.*

No. 1 CA-CR 20-0489
FILED 1-27-2022

Appeal from the Superior Court in Maricopa County
No.  CR2018-001618-001
The Honorable Jennifer Ryan-Touhill, Judge
The Honorable Michael J. Herrod, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Andrew S. Reilly
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Robert W. Doyle
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Samuel A. Thumma and Chief Judge Kent E. Cattani joined.

**C A M P B E L L**, Judge:

¶1        Joshua D. Valvano appeals his convictions and sentences for sexual conduct with a minor, attempted sexual conduct with a minor, and continuous sexual abuse of a child. He contends the trial court erred by denying his motion to suppress admissions he made during telephone conversations, by denying his motion for mistrial after one of the victims commented on his failure to testify, by admitting the testimony of a cold expert, and by failing to mitigate his presumptive sentences. For the reasons below, we affirm.

## BACKGROUND[1]

¶2        In 2004, the victims' family moved to Arizona. For the next couple years, Valvano, a family friend, would frequently visit and stay overnight. During those visits, Valvano slept with Kevin or his brother Noah, and sexually abused them.[2] Kevin and Noah were young teenagers at the time.

¶3        In 2018, Noah called Valvano and confronted him about the abuse. Valvano denied the allegations at first, but he eventually made incriminating statements. Detectives who were with Noah during the telephone call recorded the conversation.

¶4        Approximately one month later, Noah made another call to Valvano, who admitted to the abuse. Kevin was with Noah at the police station during this second call, and before hanging up, Noah suggested Valvano call Kevin. Valvano promptly did so, and during that call, he admitted sexually abusing Kevin.

¶5        In a three-count indictment, the State charged Valvano with the following dangerous crimes against children: sexual conduct with a

---

[1]        "We view the facts in the light most favorable to sustaining the convictions." *State v. Robles*, 213 Ariz. 268, 270, ¶ 2 (App. 2006).

[2]        We use pseudonyms to protect the victims' privacy.

minor, a class 2 felony; attempt to commit sexual conduct with a minor, a class 3 felony; and continuous sexual abuse of a child, a class 2 felony. Before trial, Valvano moved to suppress his recorded admissions, arguing they were involuntary. The superior court listened to the recordings, found Valvano's statements were voluntary, and denied the motion.

¶6 The jury ultimately found Valvano guilty as charged, and the superior court imposed two presumptive consecutive 20-year prison terms for the class 2 felony convictions followed by lifetime probation for the class 3 felony conviction. Valvano timely appealed.

**DISCUSSION**

**I. Motion to Suppress**

¶7 Valvano argues the superior court erred by denying his motion to suppress. He contends the victims exerted undue pressure on him that rendered his incriminating statements involuntary.

¶8 "Monitoring and recording of a telephone conversation with the consent of one party . . . is authorized by statute in Arizona." *State v. Allgood*, 171 Ariz. 522, 523–24 (App. 1992); A.R.S. § 13-3012(9). Nevertheless, "[t]o be admissible, [Valvano's] statement[s] must be voluntary, not obtained by coercion or improper inducement." *State v. Ellison*, 213 Ariz. 116, 127, ¶ 30 (2006). The State has the burden of proving, by a preponderance of the evidence, that a statement was voluntary. *State v. Amaya–Ruiz*, 166 Ariz. 152, 164 (1990). A statement was involuntary if there was (1) "coercive police behavior" and (2) "a causal relation between the coercive behavior and [the] defendant's overborne will." *State v. Boggs*, 218 Ariz. 325, 336, ¶ 44 (2008). In evaluating voluntariness, "the trial court must look to the totality of the circumstances surrounding the confession and decide whether the will of the defendant [was] overborne." *State v. Lopez*, 174 Ariz. 131, 137 (1992). A finding of voluntariness will be sustained absent a showing of error. *State v. Poyson*, 198 Ariz. 70, 75, ¶ 10 (2000).

¶9 Valvano has not shown the superior court erred in determining Valvano's admissions to the victims were voluntary. The court listened to the recorded calls and was therefore able to consider conversational subtleties such as tone and nuance as factors to find that Valvano voluntarily incriminated himself. Specifically, the court found that Noah was not unduly pressuring Valvano, but "frustrat[ed]" with Valvano's initial obfuscation and attempts to deflect. Such frustration does not amount to coercion. *See State v. Keller*, 114 Ariz. 572, 573 (1977) (finding that the victim's demands for the return of her property, including a threat

to call police, did not exert such pressure to render defendant's statements involuntary). Further, the superior court properly found Valvano could have terminated the calls before incriminating himself. Indeed, in the call to Kevin, Valvano made the call, apologized for the abuse, and invited further dialogue. Valvano has not shown that the court erred by denying his motion to suppress.

## II.    Motion for Mistrial

**¶10**        As defense counsel was cross-examining him, Kevin unexpectedly blurted out, "Is [Valvano] going to have the nerve to come up on the stand or is he going to stay there?" Valvano then moved for a mistrial. The court ordered the comment immediately stricken, and the court denied Valvano's subsequent mistrial motion.

**¶11**        Valvano contends that the court should have granted the mistrial motion, arguing this testimony violated his Fifth Amendment rights, and that striking Kevin's comment was insufficient to remedy the constitutional violation. [3]

**¶12**        "When a witness unexpectedly volunteers an inadmissible statement, the remedy rests largely within the discretion of the trial court." *State v. Marshall*, 197 Ariz. 496, 500, ¶ 10 (App. 2000). In deciding whether to grant a motion for mistrial after inadmissible testimony is unexpectedly interjected, the trial court must consider "(1) whether the remarks called to the attention of the jurors matters that they would not be justified in considering in determining their verdict, and (2) the probability that the jurors, under the circumstances of the particular case, were influenced by the remarks." *State v. Stuard*, 176 Ariz. 589, 601 (1993) (quoting *State v. Hallman*, 137 Ariz. 31, 37 (1983)). We review the trial court's denial of a motion for mistrial for an abuse of discretion because the trial court "is in the best position to determine whether the evidence will actually affect the outcome of the trial." *State v. Jones*, 197 Ariz. 290, 304, ¶ 32 (2000).

**¶13**        Here, Kevin's comment was an improper comment on Valvano's Fifth Amendment right to remain silent. *See State v. McDaniel*, 136 Ariz. 188, 194 (1983) ("It is well settled that in criminal cases the jury is not entitled to draw any inferences from the decision of a witness to exercise

---

[3]     The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.

his Fifth Amendment privilege."). However, the court immediately struck the comment. Moreover, the prosecutor did not elicit the comment, nor did the prosecutor refer during closing arguments to Valvano's failure to testify. Additionally, the evidence—including Valvano's own statements during the confrontation calls—overwhelmingly established his guilt. Valvano cites no authority standing for the proposition that, under these circumstances, a remedy less drastic than a mistrial amounts to reversible error. *See State v. Adamson*, 136 Ariz. 250, 262 (1983) ("A declaration of a mistrial is the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted."). On this record, Valvano has shown no abuse of discretion.

## III. Expert Testimony

**¶14** Dr. Wendy Dutton testified for the State as a "cold" expert, meaning she had no information about the facts of this case. Rather, based on research in the field and her own experience as a forensic interviewer, Dutton described the process of victimization and general behavioral characteristics of child victims of alleged sexual abuse. On appeal, Valvano relies on *State v. Starks*, 251 Ariz. 383 (App. 2021), to argue Dutton's testimony constituted inadmissible profile evidence.

**¶15** Because he did not object to Dutton's testimony on this basis, Valvano bears the burden on appeal of establishing fundamental error, which requires him to prove either error and resulting prejudice, or that the error "was so egregious that he could not possibly have received a fair trial." *State v. Escalante*, 245 Ariz. 135, 140, 142, ¶¶ 12, 21 (2018). He fails to do so.

**¶16** Profile evidence is an informal compilation of behavioral characteristics typical of persons who commit a particular crime. *See State v. Haskie*, 242 Ariz. 582, 585, ¶ 14 (2017). It is admissible in limited circumstances but is generally prohibited as substantive proof of guilt. *See, e.g.*, *State v. Garcia-Quintana*, 234 Ariz. 267, 272–73, ¶¶ 23–24 (App. 2014) (citing *State v. Lee*, 191 Ariz. 542, 545, ¶ 14 (1998)).

**¶17** In *Starks*, a molestation case, the defendant preserved his claim that Dutton's cold expert testimony constituted improper profile evidence. *Starks*, 251 Ariz. at 388, ¶ 7. Reviewing Dutton's testimony on appeal, this Court found she "simply listed things that sexual abusers commonly do to establish a relationship with the victim to enable the sexual abuse." *Id.* at 390, ¶ 16. For example, the prosecutor asked Dutton about

"strategies perpetrators use to build a relationship with a victim," and Dutton responded that abusers would "do or say things to gain power and control over [victims] and over their primary caretakers," and she gave general examples of how abusers typically do so. *Id.* at 388, ¶ 8. This Court concluded such testimony was improper profile evidence that served "to improperly invite the jury to conclude that Starks was guilty because his actions matched those that the expert reported to be common to perpetrators." *Id.* at 390, ¶ 16. Further, because Dutton "did not attempt to explain any victim behavior," and her testimony generally "lacked the larger context of victimization," this Court concluded Dutton's testimony served no purpose other than to provide improper profile evidence. *Id.* at 390–91, 393, ¶¶ 16, 21, 30. The court then found that the error in permitting the profile evidence was not harmless. *Id.* at 391, 395, ¶¶ 21, 42.

**¶18** Unlike the expert's testimony in *Starks*, Dutton's substantive testimony here exclusively described victim behavior in response to sexual abuse. Furthermore, also in contrast with *Starks*, the prosecutor in this case did not rely on an improper profile during closing arguments, but instead only mentioned Dutton's testimony briefly to explain the victims' delayed disclosures.[4] *See id.* at 395, ¶ 42. Given these differences from *Starks*, Valvano fails to establish error, let alone fundamental error. *See id.* at 389, ¶ 11 (recognizing that cold expert in child sex cases is generally admissible to help the jury understand a victim's delayed or inconsistent reporting of abuse).

## IV. Sentencing

**¶19** Valvano raises three issues challenging his presumptive prison sentences. *See* A.R.S. § 13-705(C) (presumptive sentence for sexual conduct with a minor and continuous sexual abuse of a child is 20 years). Because Valvano failed to bring these purported errors to the trial court's attention at sentencing, we review for fundamental error. *Escalante*, 245 Ariz. at 140, ¶ 12.

**¶20** Valvano first claims the trial judge improperly expressed his personal religious beliefs at sentencing when he told Valvano: "And,

---

[4] For this reason, we reject Valvano's summary assertion that Dutton's testimony was irrelevant and inadmissible under Arizona Rule of Evidence 702. *See* Ariz. R. Evid. 702(a) ("[An expert witness] . . . may testify in the form of an opinion or otherwise if . . . the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." ).

frankly, you've harmed the Body of Christ. And you know what I mean when I say that." Although such a comment may have been inappropriate, Valvano has not shown that it rose to the level of fundamental error here.

¶21 Valvano's and the victims' shared Christian faith was a major theme at trial and sentencing. According to the evidence, both families were active in the same church, and at sentencing, the victims' and Valvano's fathers spoke in detail about their faith. Considering this context in light of the court's implicit finding that Valvano lacked remorse, *see infra* ¶ 23, the court's comment was more focused on the extent of harm Valvano caused than it was a reflection of the judge's personal religious views or perceived victimization. *See United States v. Bakker*, 925 F.2d 728, 740 (4th Cir. 1991) (finding a due process violation occurred when sentencing judge stated that defendant "had no thought whatever about his victims and *those of us who do have a religion are ridiculed as being saps from money-grubbing preachers or priests*" because statement impermissibly reflected that "the court's own sense of religious propriety had somehow been betrayed"). Valvano therefore fails to satisfy his burden of establishing fundamental error. *See Escalante*, 245 Ariz. at 142, ¶ 21 (describing defendant's burden to show either error that goes to the foundation of his case, error that takes from him a right essential to his defense, or error so egregious that a fair trial was impossible).

¶22 Valvano next argues the trial court improperly punished him for rejecting the State's plea offer and exercising his right to trial. In support, Valvano refers to the court's following comments:

> I read the mitigation report and it talked about your taking responsibility in the confrontation call and your interview with the officers, but you know how you should have taken responsibility? *You should have never forced this to a trial*. And for several reasons: you forced these victims to go through trial. It is the most harrowing thing you can think of, especially this kind of case, and you should have never done that.

(Emphasis added.)

¶23 Aggravating a sentence based on a defendant's lack of remorse and failure to admit responsibility can constitute fundamental error because it constitutes an improper comment on a defendant's Fifth Amendment right against self-incrimination. *State v. Trujillo*, 227 Ariz. 314, 318, ¶ 15 (App. 2011). Here, however, the trial court rejected Valvano's

proffered remorse as a mitigating factor and imposed *presumptive* sentences. As the court told Valvano at sentencing: "The biggest concern I have, Mr. Valvano, . . . in your statement . . . you said if you harmed anyone. That's not an apology. That's not taking responsibility. That's like when a kid punches another kid and says, [']Well, if I hurt you, I'm sorry.[']" Thus, the court was not punishing Valvano for asserting his constitutional rights; rather, the court found Valvano's expressed remorse was not credible and therefore not a mitigating factor. Valvano therefore fails to establish that, although the court may have improperly admonished him for exercising his right to trial, the court would have imposed a more lenient sentence absent the error.

¶24 Finally, Valvano contends the court erred by failing to recognize it had discretion to impose mitigated sentences. *See State v. Garza*, 192 Ariz. 171, 176, ¶¶ 17–18 (1998) (remanding for sentencing where the sentence was within the appropriate range, but the trial court mistakenly believed it had no discretion). As noted however, the court considered the mitigation evidence Valvano presented and rejected it. Moreover, the transcript from the sentencing reflects that the court understood it had the discretion to impose a mitigated sentence, but decided not to do so. Accordingly, the court properly recognized its discretion. No error, fundamental or otherwise, occurred. *See Escalante*, 245 Ariz. at 142, ¶ 21 ("[T]he first step in fundamental error review is determining whether trial error exists.").

## CONCLUSION

¶25 For the foregoing reasons, Valvano's convictions and sentences are affirmed.

